KENTUCKY RETIREMENT
SYSTEMS, Appellant

v.

Charles WIMBERLY, Appellee

2015-SC-000159-DG

Supreme Court of Kentucky.

RENDERED: AUGUST 25, 2016

COUNSEL FOR APPELLANT: Katherine I. Rupinen, Leigh Davis, Brian C. Thomas, Carrie Slayton, Joseph Patrick

Bowman, Anne Caroline Bass, Mathew Michael Galante, Kentucky Retirement Systems

COUNSEL FOR APPELLEE: John Hardin Gray, Roy Church Gray III

OPINION OF THE COURT BY JUSTICE KELLER

Charles Wimberly filed an application for disability retirement benefits with the Kentucky Retirement Systems (KERS).[1] A hearing officer recommended that Wimberly's application be denied and, before KERS could render a final decision, Wimberly filed a second application pursuant to Kentucky Revised Statute (KRS) 61.600(2). Following the recommendation of another hearing officer, KERS denied that application. Wimberly sought re view by the Franklin Circuit Court which reversed KERS, and KERS appealed to the Court of Appeals, which affirmed the circuit court. We granted discretionary review to address the parties' arguments regarding the application of the doctrine of *res judicata* and to determine whether the consumption of alcohol is or can be a pre-existing condition. Having reviewed the record and the arguments of the parties, we affirm.

## I. BACKGROUND.

Wimberly, who worked as a bus driver for the Transit Authority of River City (TARC), became a KERS covered employee in 1991. As part of his job, Wimberly drove various buses, which required him to occasionally assist disabled passengers with their packages and wheelchairs. In October 2001, Wimberly suffered a concussion when he was involved in a work-related motor vehicle accident. Because of post-concussion symptoms, Wimberly was taken off work. In March of 2002, while he was still off work, Wimberly went to the Caritas Medical Center emergency room complaining of chest pain and shortness of breath. Dr. Kenny, who treated Wimberly at Caritas, noted that Wimberly admitted "to heavy alcohol abuse in the past" and that "he still drinks at least a case of beer a week." Based on this history and his examination of Wimberly, Dr. Kenny made a diagnosis of severe biventricular failure of unknown etiology with differential diagnoses of ischemic or metabolic cardiomyopathy, possibly associated with alcoholism or diabetes. Dr. Kenny and one of his partners, Dr. Schoen, continued to treat Wimberly for his heart condition, noting at various times that the condition was idiopathic, possibly alcohol induced, or possibly related to Wimberly's Type 2 diabetes.

On February 7, 2003, Wimberly filed his first of two applications for disability-retirement benefits. In that application he listed his disabling conditions as heart failure, diabetes, headaches, itching, foot numbness, dizziness, and vision problems. KERS submitted Wimberly's application and medical records to Drs. Keller[2] and McElwain for review, and both recommended that Wimberly's claim be denied. Based on the recommendations of Drs. Keller and McElwain, KERS denied Wimberly's application. Wimberly submitted additional medical records and Drs. Keller and McElwain conducted a second review, both again concluding that the claim should be denied. KERS again followed the physicians' recommendations and de-

---

1. Wimberly was a member of the County Employees Retirement System, which is administered by the board of trustees of the Kentucky Retirement Systems. We use the initials KERS rather than KRS to avoid confusion with initials used to designate the Kentucky Revised Statutes.

2. Dr. William Keller is not related to Justice Michelle M. Keller.

nied Wimberly's claim. Wimberly then asked for a hearing.

Prior to the hearing, Wimberly filed numerous medical records. The most significant of those records were: a statement from Dr. Scheon in May 2003 indicating that Wimberly could drive his own car but would probably never be able to drive commercially again; a statement from Dr. Kenny indicating that Wimberly should not drive a bus or do any other dangerous occupational activities; several statements regarding Wimberly's alcohol consumption or lack thereof; and at least one hospital admission for treatment of an episode of syncope (fainting).

On December 12, 2003, Wimberly testified before a hearing officer that: his job was stressful; he worked in extreme weather conditions; he began treating for his diabetes in 1998 or 1999; he had undergone laser surgery on both eyes; he started drinking in 1972 but does not consider himself to be a heavy drinker, drinking one to three beers a week; and he has an irregular heartbeat, shortness of breath, and dizziness. Based on Wimberly's testimony and the medical records, the hearing officer recommended that Wimberly's claim be denied. In doing so, the hearing officer made two relevant findings: Wimberly's diabetes and cardiac conditions predated his membership in KERS; and Wimberly was not totally and permanently incapacitated from his job duties. We note that, while the hearing officer mentioned Wimberly's alcohol consumption, he did not make any specific findings regarding its relationship to Wimberly's medical conditions. Wimberly filed exceptions, arguing in pertinent part that the hearing officer erred because there was no evidence that Wimberly's cardiomyopathy and diabetes pre-existed his covered employment and that "alcohol use does not rise to the level

of a 'bodily injury, mental illness, disease, or condition' as required by statute ...."

Approximately a month after filing his exceptions, and nearly two months before KERS issued a final order denying his first application, Wimberly filed his second application. In support of his second application, Wimberly filed additional medical records showing that he continued to receive treatment for cardiomyopathy and diabetes. The records also indicate that Wimberly: underwent eye surgeries for diabetic macular edema in 2004; was hospitalized for treatment of chest pain and shortness of breath in 2004; and had undergone carpal and cubital tunnel release surgeries in 2004. At KERS's request, Drs. Keller and McElwain again reviewed Wimberly's medical records and again recommended denial. Based on those recommendations, KERS denied Wimberly's second application, and Wimberly requested a hearing.

Prior to the second hearing, Wimberly filed additional evidence. In an October 26, 2004 letter, Dr. Schoen stated that Wimberly could continue driving his personal car but that he was not able to drive commercially. Dr. Schoen also stated that, although records indicated Wimberly was a heavy drinker, Wimberly denied being an alcoholic and stated that family members would support that assessment. Finally, Dr. Schoen stated that there could be other causes for Wimberly's cardiomyopathy, including hypertension and diabetes, and he concluded that the etiology of that condition was unclear. Dr. Kenny stated that Wimberly and family members stated that Wimberly never drank to excess and that Wimberly had never had any problems with alcohol abuse. As did Dr. Schoen, Dr. Kenny stated that there are multiple possible causes for Wimberly's cardiomyopathy, and he could not "say that alcohol consumption directly caused

any of this presentation that [Wimberly] had in the past." Wimberly also filed a statement from the benefits coordinator at TARC, indicating that Wimberly had never tested positive for alcohol or drugs while employed there.

Drs. Keller and McElwain reviewed this additional evidence and again recommended denial. Based on those physicians' reports, KERS denied Wimberly's claim.

Wimberly then requested a second hearing and introduced one additional pertinent medical record. Dr. Arnett, Wimberly's general practitioner, stated that Wimberly's 1990 liver function test was normal and his 1998 abdominal CT scan showed no liver abnormalities. These findings suggested that Wimberly was not a heavy drinker. They also suggested that a 1990 gallbladder ultrasound that showed evidence of either cirrhosis or hepatocellular disease "had [probably] been ... misinterpreted as suggesting cirrhosis."

At the second hearing, Wimberly again testified about his job duties, noting that the job was often stressful. He stated that he could not drive because of his bouts of dizziness and his inability to handle the stress. Additionally, he noted that he had undergone five eye surgeries and that a sixth had been scheduled because he continued to have blurred vision. Wimberly stated that he does drive his personal vehicle short distances, but he avoids the highway because of his dizziness. Wimberly's wife testified that she does most of the driving because her husband is "not alert enough" to drive. She does not believe he could drive a bus, and he does not have the strength to help passengers board a bus.

Following the hearing, the hearing officer rendered a report recommending that Wimberly's claim be denied. In doing so, the hearing officer noted that the evidence from the initial application had been admitted into evidence, and he adopted that

evidence "due to the fact that [Wimberly] did not appeal that decision." It does not appear that the hearing officer conducted any independent review of that evidence. The hearing officer then stated that he would not consider Wimberly's carpal tunnel syndrome or his diabetic retinopathy because both conditions were diagnosed after Wimberly's date of last-paid employment. The hearing officer then made the following pertinent findings of fact:

Claimant's primary argument is an attempt to show that his diabetes and alcohol use were not pre-existing conditions. However, he has failed to provide any additional medical evidence to show that his conditions would prevent him from performing the duties of a Coach Driver for TARC as previously determined in the first decision.

Claimant's condition at the time of the second application had improved based on the medical information submitted as compared to the information provided at the first hearing.

The undersigned Hearing Officer cannot make a finding as to whether or not his use of alcohol is an indirect cause of his cardiac condition, except for the fact that Dr. Kenny so indicated initially. All of the evidence submitted is substantially after his last date of paid employment and, as noted by counsel for the Retirement Systems, is now an attempt to change records based on statements of the Claimant without objective evidence.

It is found that the Claimant's heart condition has improved substantially and, accordingly, while Dr. Schoen says that the Claimant cannot drive commercially, he has not set forth any basis for this opinion, and further allows him to drive privately, which still would jeopardize the traveling public, as well as the Claimant.

The Claimant has failed to set forth objective medical evidence to support his application for disability retirement benefits.

KERS remanded this matter to the hearing officer with instructions for him to "make specific findings regarding whether or not any of the Claimant's condition preexisted his membership ... in the Systems." On remand, the hearing officer noted that his predecessor found that Wimberly's treating physicians noted throughout the record that his cardiac condition was likely the result of alcohol use, "which predates his membership in the systems." Based on the preceding, the second hearing officer found that Wimberly's use of alcohol, "which existed prior to his initial employment date, indirectly, if not directly, affected his cardiac condition, as evidenced by" previous findings and "statements of doctors prior to the second hearing . . . ." The hearing officer stated that he could not determine from the record whether Wimberly's diabetes preexisted his employment; however, he stated that condition did not prevent Wimberly from performing his duties.

Wimberly filed exceptions specifically arguing that *res judicata* did not apply to this claim and that adopting prior findings without any meaningful review defeated the purpose of KRS 61.600(2). Wimberly also argued there was no evidence his diabetes pre-existed his employment and that his diabetes would disqualify him from operating as a commercially licensed driver. Despite Wimberly's exceptions, KERS adopted the hearing officer's findings and recommendations and denied Wimberly's claim. Wimberly then appealed to the circuit court.

The circuit court initially held that, based on *res judicata*, a claimant is barred from re-litigating the same facts and issues. Therefore, KERS's refusal to consider the evidence Wimberly filed with his first application was appropriate. Furthermore, the court determined that there was substantial evidence to support denial of Wimberly's claim. Wimberly filed a motion to vacate and amend, which the circuit court granted. In doing so, the court noted that strict application of *res judicata* would render KRS 61.600(2) meaningless. The court then found that KERS improperly applied the law regarding pre-existing conditions because alcohol consumption is not a condition. Furthermore, the court found that Wimberly clearly met his burden of proof because all of his treating physicians, and even his employer, agreed that he should not operate a commercial vehicle. Finally, the court found that Wimberly's ability to drive his own vehicle "in no way indicates an ability to perform the duties of his former position as a Coach Operator." KERS filed a motion to alter, amend, or vacate, which the court denied. KERS then appealed to the Court of Appeals, which affirmed, and we granted KERS's motion for discretionary review.

## II. STANDARD OF REVIEW.

Analysis of the issues raised by KERS requires us to apply differing standards of review. Therefore, we set forth the appropriate standard when we analyze each issue.

## III. ANALYSIS.

### A. *Res judicata.*

KERS argues that the Court of Appeals did not properly apply the doctrine of administrative *res judicata*. However, as we note below, the issue before us actually involves the extent of the review KERS is obligated to undertake when an employee files a reapplication for disability benefits pursuant to KRS 61.600(2). That issue is one of statutory interpretation that

we review *de novo. Saint Joseph Hosp. v. Frye*, 415 S.W.3d 631, 632 (Ky.2013).

> The rule of *res judicata* is an affirmative defense which operates to bar repetitious suits involving the same cause of action. The doctrine of *res judicata* is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. Issue preclusion bars the parties from re[-]litigating any issue actually litigated and finally decided in an earlier action.

*Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 464–65 (Ky.1998) (internal citations and footnote omitted).

As the circuit court and the Court of Appeals both noted, a strict application of *res judicata* to this action would have barred Wimberly from filing a second application that was based on the same claim as his first application. However, KRS 61.600(2) requires KERS to accept an employee's timely filed "reapplication based on the same claim of incapacity" and to reconsider the claim "for disability if accompanied by new objective medical evidence." Thus, the statute specifically forecloses a strict application of *res judicata* to claims such as Wimberly's.

However, KRS 61.600(2) does not completely abrogate *res judicata* in disability-retirement claims. As KERS notes, one function of *res judicata* is to prevent "repeat litigation [of] the same claims with the same set of facts." The requirement that a reapplication be accompanied by new objective medical evidence prevents a claimant from attempting to obtain a different outcome by simply re-submitting the same objective medical evidence for a second review. However, that is the extent of *res judicata's* impact because, once

reapplication is appropriately made, KERS is required to reconsider the claim.

The question then is, what review must KERS undertake when an employee appropriately files a second application based on the same claim. As noted above, KRS 61.600(2) states that KERS shall reconsider the claim. "Reconsider" means "[t]o discuss or take up (a matter) again." *Black's Law Dictionary* (10th ed. 2014). Thus, based on the plain meaning of the statute, KERS must take up the issue of disability again. To do so, KERS must review the objective medical evidence previously filed in conjunction with the new objective medical evidence filed as part of the reapplication proceedings. KERS cannot, as the hearing officer did herein, simply state that the evidence from the first application is "adopted ... due to the fact that [Wimberly] did not appeal" the first denial. Doing so does not amount to reconsidering the claim.

We note KERS's argument that "[t]he Court of Appeals merely gave cursory acknowledgement to the doctrine of administrative *res judicata,* and then made the application of the doctrine irrelevant by holding that the smallest modicum of new evidence reopens the old evidence to reconsideration." However, if the application of *res judicata* is essentially irrelevant in this situation, that irrelevancy comes from KRS 61.600(2), not the Court of Appeals. Furthermore, the statute does not specify how much "new objective medical evidence" is needed only that some is needed. In 2000, the legislature deleted the requirement that a reapplication had to be accompanied by "evidence of a substantial change in the person's condition," a clear indication that "the smallest modicum of new evidence" is sufficient to require reconsideration of a claim.

Finally, we agree with KERS that "[t]he Court of Appeals ... erred when it held

that the Hearing Officer's recommendation reflected his consideration of the evidence from the first application." As KERS notes, the hearing officer simply stated that certain records had been filed "and then began his review of the evidence with the records submitted as part of the second application." Simply stating that certain records have been filed does not satisfy the statutory requirement for KERS to reconsider a claim upon reapplication. To satisfy that requirement, KERS must review the initial evidence in conjunction with the new evidence when addressing a reapplication. Thus, the review of Wimberly's reapplication was not sufficient.

### B. Substantial evidence.

KERS made two findings when it denied Wimberly's claim: (1) his preexisting abuse of alcohol contributed, at least indirectly, to his cardiac condition; and (2) he had not met his burden of proving that he is disabled. KERS argues that the circuit court and the Court of Appeals erred when they concluded that neither of these findings were supported by evidence of substance.

▮ A covered employee is entitled to disability-retirement benefits if he has shown that he is mentally or physically unable to perform "the job from which he received his last paid employment." KRS 61.600(3)(a).

> The party with the burden of proof on any issue has the burden of going forward and the ultimate burden of persuasion as to that issue. The ultimate burden of persuasion in all administrative hearings is met by a preponderance of evidence, in the record. Failure to meet the burden of proof is grounds for a recommended order from the hearing officer.

KRS 13B.090(7). As fact finder, KERS is afforded great deference with regard to " 'its evaluation of the evidence heard and the credibility of witnesses . . .' including its findings and conclusions of fact." *Kentucky Retirement Systems v. Brown*, 336 S.W.3d 8, 14 (Ky.2011)(*citing Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972)). When KERS denies a claim, the party seeking benefits must establish on appeal that the evidence was "so compelling that no reasonable person could have failed to be persuaded by it." *Brown, 336* S.W.3d at 14–15 (*citing McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454 (Ky.App.2003)). With the preceding general principles in mind, we address KERS's sufficiency of the evidence arguments.

### 1. Pre-existing abuse of alcohol.

▮ An employee is not entitled to benefits if his inability to perform the job from which he last received paid employment is the direct or indirect result of a "bodily injury, mental illness, disease, or condition which pre-existed membership in the system." KRS 61.600(3)(d). "In reaching its determination whether a condition is pre-existing, the Kentucky Retirement Systems must base its decision under the guidance of KRS 61.600(3), which requires the evaluation of 'objective medical evidence.' " *Brown*, 336 S.W.3d at 14. Objective medical evidence means:

> reports of examinations or treatments; medical signs which are anatomical, physiological, or psychological abnormalities that can be observed; psychiatric signs which are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; or laboratory findings which are anatomical, physiological, or psychological phenomena that can be shown by medically acceptable laboratory diagnostic techniques . . . .

KRS 61.510(33). KERS argues that its findings regarding Wimberly's pre-existing alcohol abuse and its impact on his cardiac condition are supported by substantial evidence. We disagree.

The record herein contains several statements by Drs. Schoen and Kenny that Wimberly had a history of heavy drinking, which Wimberly denied. Although both physicians said that Wimberly's heavy drinking occurred in either the past or the remote past, neither of them stated that it occurred before Wimberly began his covered employment. Furthermore, although both physicians said at various times that Wimberly's cardiomyopathy could be the result of his consumption of alcohol, neither stated that alcohol consumption was the definitive cause. Finally, KERS has pointed to no objective medical evidence in this record that Wimberly was a heavy drinker or when that drinking began. The only objective medical evidence that remotely supports KERS's position is a notation about cirrhosis in a 1990 gallbladder ultrasound. However, as Dr. Arnett explained: Wimberly had a normal liver function test in 1990 and a 1998 abdominal CT scan showed no liver abnormalities; the 1990 ultrasound was not a definitive test of the liver and it raised the possibility of hepatocellular disease as well as cirrhosis; and there is no evidence that, if Wimberly had cirrhosis in 1990, it was caused by alcohol abuse. Therefore, the finding by the hearing officer that pre-existing alcohol abuse indirectly caused Wimberly's heart condition is not supported by evidence of substance.

We note that KERS raises additional issues with regard to preservation and the application of *Brown* to Wimberly's claim. Based on the preceding we need not address those issues. However, we note that Wimberly did argue that alcohol use does not rise to the level of bodily injury, mental illness, disease, or condition in his exceptions following rendition of the initial hearing officer's recommendation. Therefore, even though we need not address it, whether alcohol use is a condition or a behavior was preserved.

Furthermore, we note KERS's invitation to give consideration to the dissent in the Court of Appeals opinion regarding alcoholism as a pre-existing condition. We agree with the dissent, in part, that any conclusion that alcohol abuse cannot be a pre-existing condition as a matter of law is erroneous. Although, there is not sufficient proof to make that case here, that does not mean the case could not be made under another set of facts.

However, we note that reliance on the *Diagnostic And Statistical Manual of Mental Disorders*(5th Ed., 2013) (DSM-5) by the dissent in the Court of Appeals opinion to support its conclusion that Wimberly had an alcohol use disorder was misplaced for at least four reasons. First, nothing from the DSM-5 was ever entered into evidence. Second, "[a] medical treatise ... written in the abstract ... is never sufficient to qualify as objective medical evidence " absent an opinion from a medical expert linking the treatise to objective medical evidence. *Brown*, 336 S.W.3d at 17. Third, the DSM-5 is designed for use by mental health professionals. Fourth, the article cited by the dissent regarding alcohol use disorder (National Inst. On Alcohol Abuse and Alcoholism (http://pubs.niaaa.nih.gov/publications/dsmfactsheet/dsmfact.pdf)(June 2015)[3] indicates that the DSM-5 criteria necessary to diagnose alcohol use disorder primarily concern the impact of alcohol consumption on a person's social, work, and home life, not the amount of

3. We note that the article cited by the dissent was updated in July 2016.

alcohol consumed.[4] Although there is evidence that Wimberly consumed a significant amount of alcohol, there is no evidence that Wimberly's alcohol consumption had any negative impact on his social, home, or work life. Therefore, any reliance on the DSM-5 is misplaced in this matter.

## 2. Disability.

■ The hearing officer recommended denial of Wimberly's claim because Wimberly "failed to provide any additional medical evidence to show that his conditions would prevent him from performing the duties of a Coach Driver for Tarc as previously determined in the first decision." As stated above, on a reapplication, KERS is required to reconsider a claim by reviewing the evidence filed with the initial application as well as the evidence filed with the second application. It is clear from the hearing officer's recommendation that he did not review the medical evidence filed with the first application, and KERS admits as much in its brief. To remedy that shortcoming, we can follow one of two paths. We can remand this matter for an appropriate review. Or we can affirm the findings of the Court of Appeals and the circuit court that there is no evidence of substance to support KERS denial of Wimberly's claim. We choose the latter.

■ As noted above, we only reverse a denial of a claim by KERS if the evidence of disability is so overwhelming that no reasonable person could reach the conclu-

sion to deny. *Brown*, 336 S.W.3d at 14–15. Wimberly presented objective medical evidence that he suffers from congestive heart failure as a result of cardiomyopathy, and he has a history of treatment for syncope. His treating physicians have opined that, with these conditions, he is unable to drive commercially. Pursuant to the Code of Federal Regulations (CFR) a person is not qualified to operate a commercial vehicle if he has "a current clinical diagnosis of myocardial infarction, angina pectoris, coronary insufficiency, thrombosis, or any other cardiovascular disease of a variety known to be accompanied by syncope, dyspnea, collapse, or congestive cardiac failure." 49 C.F.R. § 391.41(b)(4).[5] This regulation supports TARC's position that Wimberly cannot return to work as a driver until he is released by a physician to do so. It also supports Wimberly's testimony during the second hearing that, although he retained his commercial driver's license at the time of his first hearing, he had not sought to renew it. Furthermore, these regulations belie the hearing officer's conclusion and KERS's argument that, because Wimberly was released to drive his own car, he could drive a city bus for eight hours a day. As noted in 49 C.F.R. § 391.43(f)(1): a "medical examiner must be aware of the rigorous physical, mental, and emotional demands placed on the driver of a commercial motor vehicle." A person who is driving his or her own car is not subject to these regulations and, unless employed as some type of courier, does not

---

4. The DSM-5 factors include: drinking more than and longer than intended; the inability to cut down or stop drinking; being sick or getting other aftereffects; the inability to think of nothing but drinking; drinking interfering with family, job, or school; having trouble with family or friends because of drinking; foregoing other activities in order to drink; getting into dangerous situations because of drinking; having had a memory blackout; continuing to drink although doing so in-

creases depression or adds to another health problem; having to increase the amount of alcohol consumed to get the same effect; and having withdrawal symptoms.

5. Pursuant to 601 KAR 1:005 Section 3(1)(b)2.a. a city bus driver must pass the medical examination set forth in 49 C.F.R. 391.

drive eight hours a day. Faced with the preceding evidence, no reasonable person would have failed to be convinced of Wimberly's disability. *See Brown*, 336 S.W.3d at 14–15.

Finally, although we recognize that KERS does not have the burden of proof with regard to the existence of Wimberly's disability, we would be remiss if we did not also review the medical reports KERS filed. As set forth above, Drs. Keller and McElwain conducted four reviews of Wimberly's medical records. Following his first three reviews, Dr. Keller stated that Wimberly's conditions were related to his diabetes, which pre-existed Wimberly's covered employment. Following his fourth review, Dr. Keller stated that the onset date of Wimberly's diabetes was "a matter of considerable conjecture and debate." Having found that his first three opinions were based on conjecture, Dr. Keller stated that Wimberly's cardiomyopathy had improved to the point that Wimberly could return to work as a TARC driver. We note that Dr. Keller did not address TARC's opinion that Wimberly could not return nor did he address whether Wimberly would pass the physical examination necessary to renew his commercial driver's license.

Following his first review, Dr. McElwain stated that Wimberly's congestive heart failure had been successfully treated and reversed. Furthermore, because he saw no "description of total and permanent disability," Dr. McElwain recommended denial. However, as noted above, the standard for disability is whether an employee can perform the job from which he received his last paid employment, not total and permanent disability. Following his second review, Dr. McElwain noted that a physician had stated Wimberly could not drive, but that there was no justification for that opinion. This ignores Wimberly's diagnosis of cardiomyopathy that followed extensive objective testing and the syncope Wimberly suffered as a result of that condition, which forecloses commercial driving. Furthermore, as did Dr. Keller, Dr. McElwain ignored TARC's opinion that Wimberly could not return and he did not address whether Wimberly would pass the physical examination necessary to renew his commercial driver's license. Following his third review, Dr. McElwain stated that he could not determine when Wimberly's diabetes began but that his alcohol abuse was "in the remote past" which "would certainly appear to place it prior to his reemployment date of September 1, 1991." As noted above, there is no evidence, objective or otherwise, that dates when Wimberly's alleged alcohol abuse began, and the objective evidence does not support any finding of alcohol abuse. Following his final review, Dr. McElwain again recommended denial noting an "absence of a description of total and permanent disability." Thus, Dr. McElwain's opinions were based on a misunderstanding of the law and the facts.

These opinions by Drs. McElwain and Keller, which were at best moving targets, would not have swayed any reasonable person faced with the overwhelming evidence to the contrary, that Wimberly is not disabled. Therefore, based on the entirety of the record, we agree with the circuit court and the Court of Appeals that the evidence compelled a finding in Wimberly's favor.

## IV. CONCLUSION.

For the reasons set forth above, we affirm the Court of Appeals.

All sitting. All concur.