RENDERED: OCTOBER 30, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0088-MR

REBECCA RATLIFF                                              APPELLANT


v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 16-CI-00073


KENTUCKY RETIREMENT SYSTEMS                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, KRAMER, AND TAYLOR, JUDGES.

JONES, JUDGE: The Appellant, Rebecca Ratliff, appeals a decision by the

Franklin Circuit Court affirming a decision by Kentucky Retirement Systems

("Retirement Systems") to deny Ratliff's application for disability retirement

benefits. Having reviewed the record and being otherwise sufficiently advised, we

likewise AFFIRM.

## I. BACKGROUND

Ratliff was born on June 8, 1956.  She began working for the Pike County Board of Education as a school bus driver on or about August 9, 1999.  She stopped physically performing her job duties in August of 2013, after she suffered a broken arm.  Her last day of paid employment was January 1, 2014.  Ratliff has 166 months of membership time with Retirement Systems.

Following her last day of paid employment, Ratliff applied for disability retirement benefits pursuant to KRS[1] 61.600.  She alleged incapacity based on:  (1) a broken right arm; (2) diabetes with diabetic retinopathy; (3) depression and anxiety; (4) heart attack and arrhythmias; and (5) arthritis.

Upon initial review, the Medical Review Board unanimously denied Ratliff's application for disability benefits.  The Medical Review Board was comprised of three physicians:  Dr. Nancy Mullen, Dr. O. M. Patrick, and Dr. Michael Growse.  Dr. Mullen recommended denial of benefits because Ratliff's disabling condition arose from her poor management of her pre-existing diabetes.  Dr. Patrick felt that the sum of Ratliff's maladies did not rise to the level of a permanent disabling condition.  Dr. Growse stated that Ratliff's medical records insufficiently described the extent of her allegedly disabling conditions and were

---

[1] Kentucky Revised Statutes.

inadequate to establish that she still suffered from anxiety, depression, or a fractured arm.

On April 29, 2014, Ratliff submitted additional medical records and a document titled "Certification of Application for Disability Retirement and Supporting Medical Information" to Retirement Systems. These records contained a note from Dr. Daniel Stamper, stating that he had treated Ratliff for diabetes mellitus, diabetic retinopathy, orthostatic hypotension, neurogenic syncope, hypertension, chronic anxiety, chronic depression, polypectomy, diverticulosis, cholelithiasis, fractured right humerus, arthritis, hyperlipemia, and cardiac arrhythmia. Dr. Stamper asserted that based on these conditions, Ratliff was totally and permanently disabled. However, Dr. Stamper did not provide any other statement or documentation regarding the list of conditions.

Thereafter, a majority of the Medical Review Board again rejected Ratliff's application. Dr. Mullen recommended the denial of benefits based on his determination that Ratliff's pre-existing diabetes directly or indirectly caused her disabling conditions. Dr. Growse also maintained his denial of benefits on the basis that the newly submitted records did not establish a new, disabling condition. Dr. Growse reiterated that the only disabling condition supported by the record was Ratliff's diagnosis of diabetes, which is a pre-existing condition. Only Dr. Patrick recommended approval of benefits based on this newly submitted evidence. Dr.

Patrick believed benefits should be awarded on the basis of Ratliff's arm fracture because it prevented her from obtaining a commercial driver's license ("CDL"), which her job as a bus driver required. However, he believed that any grant of benefits should be reviewed in one year and that Ratliff's other complaints did not rise to the level of permanent disability.

On December 1, 2014, Ratliff administratively challenged the Medical Review Board's denial. Her claim was assigned to a hearing officer. Following an evidentiary hearing, at which Ratliff was the only witness, the hearing officer issued a thirty-nine-page findings of fact, conclusions of law, and recommended order. The hearing officer made specific findings that Ratliff's diabetes pre-dated her employment/membership date and that her broken arm was not a permanently disabling condition. Based on her assessment of the evidence and testimony, the hearing officer concluded as follows:

> 1. [Ratliff] has **NOT submitted sufficient** objective medical evidence to support her assertion that either individually or cumulatively her: **(1) Broken Right Arm[;] (2) Diabetes and its complications including Diabetic Neuropathy and Retinopathy and Syncope[;] (3) Depression and Anxiety; (4) Heart Attack and Arrythmias; (5) Arthritis,** permanently physically and mentally incapacitated her on her last day of paid employment from performing her job as a **Bus Driver,** which was best described as sedentary work or job of similar duties.
>
> . . .

-4-

2. [Ratliff] **has NOT proven** by a preponderance of the evidence that her (1) **Diabetes and its complications including Diabetic Neuropathy and Retinopathy and Syncope, and (2) Depression and Anxiety, DID NOT** result directly or indirectly from bodily injury, mental illness, disease, or condition which **pre-existed her re-employment in CERS.**

 . . .

3. Claimant has NOT proven that her pre-existing conditions were **substantially aggravated** by an injury or accident arising out or in the course of employment. These findings are made with the consideration of the evidence of the entire Administrative Record, [Ratliff's] testimony, the KRS and [Ratliff's] Position Statements and Reply Briefs and physical exertion requirements of her last job which was sedentary work, or a job of like duties.

Record ("R.") at 101-02 (emphasis in original).

The hearing officer's recommended order was ultimately adopted without further comment by the Board of Trustees. Ratliff then filed a petition for judicial review of the Board of Trustees' final order with the Franklin Circuit Court pursuant to KRS 13B.140 and KRS 61.665. On December 11, 2018, the circuit court entered its opinion and order affirming the hearing officer's findings and conclusions as adopted by the Board of Trustees. Specifically, the circuit court concluded that:

While documentation of [Ratliff's] Diabetes and related conditions are clear in the record, it is also undisputed that her primary disabling conditions (diabetes and anxiety) are pre-existing conditions. All of the objective

-5-

medical evidence in the record supports a conclusion that these conditions pre-existed her initial employment. The Committee relied on substantial evidence in finding that [Ratliff] was not permanently mentally or physically disabled as a result of her broken right arm; diabetes and its complications, including diabetic retinopathy and diabetic neuropathy; depression and anxiety; heart attack and arrhythmias; arthritis; or any other condition. The evidence in [Ratliff's] favor does not constitute evidence that is "so compelling that no reasonable person could have failed to be persuaded by it." *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 458 (Ky. App. 2003).

R. at 166.

This appeal followed.

## II. STANDARD OF REVIEW

The administrative review process terminates when the Board of Trustees issues a final order. The Board of Trustees' order "shall be based on substantial evidence appearing in the record as a whole and shall set forth the decision of the board and the facts and law upon which the decision is based." KRS 61.665(3)(d). The *McManus*[2] standard, in conjunction with KRS 13B.150, provides the proper standard for judicial review of the Board of Trustees' decision. *Kentucky Retirement Systems v. Ashcraft*, 559 S.W.3d 812, 819 (Ky. 2018).

Judicial review begins within the framework of KRS 13B.150(2). It provides:

---

[2] *McManus*, 124 S.W.3d at 458.

-6-

(2) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:

> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of the statutory authority of the agency;
>
> (c) Without support of substantial evidence on the whole record;
>
> (d) Arbitrary, capricious, or characterized by abuse of discretion;
>
> (e) Based on an ex parte communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;
>
> (f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or
>
> (g) Deficient as otherwise provided by law.

*Id.*

When an appellant alleges that the Board's decision is not supported by sufficient evidence, the reviewing court must first consider whether the denial is supported by substantial evidence. If it is not so supported, the court is required to reverse pursuant to KRS 13B.150(2)(c) and KRS 61.665(3)(d) regardless of who

-7-

bore the burden of proof before the Board. *Bradley v. Kentucky Retirement Systems*, 567 S.W.3d 114, 119 (Ky. 2018).

If the reviewing court determines that there is some substantial evidence to support the decision, it then must apply the *McManus* standard, which is predicated on which party bore the burden of proof at the administrative level. *Ashcraft*, 559 S.W.3d at 817.

> Determination of the burden of proof also impacts the standard of review on appeal of an agency decision. When the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people. *See Bourbon County Bd. Of Adjustment v. Currans*, Ky. App., 873 S.W.2d 836, 838 (1994); *Transportation Cabinet v. Poe*, Ky., 69 S.W.3d 60, 62 (2001) (workers' compensation case); *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it. *See Currans*, *supra*; *Carnes v. Tremco Mfg. Co.*, Ky., 30 S.W.3d 172, 176 (2000) (workers' compensation case); *Morgan v. Nat'l Resources & Environ. Protection Cabinet*, Ky. App., 6 S.W.3d 833, 837 (1999).

*McManus*, 124 S.W.3d at 458.

As the *Bradley* Court explained, the distinction *McManus* accounts for is the more deferential role that the appellate court should play when reviewing and assessing the evidence.

> Preponderance of the evidence is the applicant's burden of proof before the hearing officer and Board, while the "compelling evidence" standard in *McManus* is a judicial standard of review applied by the court after the administrative process has concluded. As noted repeatedly, it is a high standard because of the deference owed the administrative fact-finder. If courts re-applied the preponderance of the evidence standard, they would be assessing the evidence and weighing it *de novo*, in direct violation of KRS 13B.150(2)'s directive that courts "shall not" substitute their judgment for the fact-finder on issues of fact.

*Bradley*, 567 S.W.3d at 120.

### III. ANALYSIS

Ratliff's application for disability retirement benefits was predicated on numerous alleged conditions, including her broken arm, arthritis, anxiety, depression, neurocardiogenic syncope ("syncope"), and, to some degree, her diabetes. For the purposes of this appeal, Ratliff has abandoned her claim with respect to all conditions except her alleged syncope. App. Br. at 4. As for her syncope, Ratliff asserts that it did not arise until she was many years past her initial membership date, and therefore cannot be considered pre-existing. She also asserts that her syncope is disabling as a matter of law because it prevents her from

-9-

passing the physical required to obtain her CDL, a prerequisite for her employment as a bus driver.

Despite Ratliff's protestations to the contrary, the circuit court did extensively address syncope as part of its review. In relevant part, the circuit court's opinion and order states:

> The Disability Appeals Committee determined that [Ratliff's] claim ought to be denied, finding that because Ratliff's medical records show that she was treated for diabetes prior to her membership date and that her **diabetic syncope** was related to her poorly controlled diabetes. Accordingly, the Committee found that benefits should be denied because [Ratliff] failed to meet her burden of proof to establish by objective medical evidence that her 1) Diabetes and its complications of .. . **Syncope** . . . were not the direct or indirect result of bodily injury, mental illness, disease, or condition which pre-existed her membership in CERS.
>
>  . . .
>
> i. Diabetes and its complications including diabetic Neuropathy and **Syncope**
>
> [Ratliff] was diagnosed with diabetes before her August 1999 employment, as her history of diabetes was noted by Dr. Stamper in 1997. [Ratliff's] 1998 CDL physical also noted that she suffers from diabetes. [Ratliff] testified that she was treated for diabetes since she was thirty-eight (38) years old, whereas she began working as a bus driver at age forty-three (43). Accordingly, the Committee found that [Ratliff's] Diabetes and related conditions pre-existed her membership date in the retirement systems. Moreover, regarding [Ratliff's] arrhythmia and **syncope**, Dr. Antimisiaris found that [Ratliff] was tolerating medical therapy well and that

-10-

these conditions are well controlled with medical therapy. Finally, at the hearing, [Ratliff] testified that she has had diabetes for a long time and it is not the reason she is disabled.

There are also several records that suggest that some of [Ratliff's] Diabetes complications and associated conditions were either caused or exacerbated by her failure to follow medical advice or take medication designed to mitigate her symptoms. On May 10, 2012, Dr. Ashby-Jones stated that [Ratliff] reported being non-compliant with her Diabetes medication in the past. On August 27, 2012, Ratliff told Dr. Ashby Jones that she had continued to not take her diabetes medications; in the treatment notes Dr. Ashby-Jones recorded "I reinforced to [Ratliff] that I can not [sic] take care of her if she does not take her meds." On September 25, 2012, Dr. Kheetan reported that [Ratliff] was noncompliant with her diabetes and hypertension medication, claiming the medication made her nauseous; Dr. Kheetan diagnosed [Ratliff] with "[p]ersonal history of noncompliance with medical treatment presenting hazards to health." On February 7, 2013, [Ratliff] presented to her cardiologist Dr. Antimisiaris with complaints of *syncope*; Dr. Antimisiaris recorded the following note in his report: "Neurocardiogenic syncope: improved orthostatic hypotension with better diabetic control. Still likely has some autonomic insufficiency from [diabetes mellitus] but [symptoms] have improved." Dr. Kheetan also counseled [Ratliff] on the importance of medical compliance.

. . .

iv. Heart Attack and Arrythmias.

[Ratliff] presented to the emergency room as requested by Dr. Stamper due to chest pain; she was found to have atrial tachycardia and was considered high risk because of her high blood pressure and diabetes. On May 24,

-11-

2013, [Ratliff] was admitted to Pikeville Medical Center with atrial tachycardia shortness of breath, chest pain, multiple cardiac risk factors, and minimal troponin elevation that could be consistent with coronary syndrome; the assessment revealed "essentially normal coronary arteries with no significant obstructive coronary artery disease." In the notes of an office visit with her heart doctor, Dr. Antimisiaris on July 31, 2013, [Ratliff] reported that she "feels great. No further palpitations or *syncope* . . . she actually stopped taking her meds 2 weeks ago but has no recurrent episodes." Dr. Antimisiaris also noted that [Ratliff's] blood pressure was high because she was off her medication and counseled her about the importance of medication compliance. Moreover, regarding Ratliff's arrhythmia and *syncope*, Dr. Antimisiaris found that [Ratliff] was tolerating the medical therapy well and that these conditions are well controlled with medical therapy.

. . .

[Ratliff] had passed medical certification for her CDL on April 23, 2013, but voluntarily surrendered it on June 27, 2014, even though it would not expire until April 2018. At the hearing, [Ratliff] testified that she cannot pass a CDL physical because of her heart condition, her arm injury, and the medicine for the pain in her arm. She also testified that she surrendered her CDL because "she did not want to pay for something she could not use."

. . .

Because the Court has found the final order to be supported by substantial evidence, [Ratliff's] appeal can only succeed if the record contains evidence in her favor that is so compelling that no reasonable person could fail to be persuaded by it. The strongest evidence supporting [Ratliff] is as follows:

i. Diabetes and its complications including Diabetic Neuropathy and *Syncope*

[Ratliff's] request for appeal included another letter from Dr. Stamper, which states: "[Ratliff] has developed complications from her Diabetes and other problems to the point that she is now totally and permanently disabled form any type of gainful employment." However, as shown at length above, [Ratliff's] claim for benefits cannot arise from diabetes as it pre-exists her membership in CERS.

 . . .

iv. Heart Attack & Arrythmias

In his letter in support of [Ratliff's] claim, cardiologist Dr. Antimisiaris referenced [Ratliff's] neurogenic *syncope* and atrial tachyarrhythmia; the letter then stating "we have had difficulty controlling her with medications and I believe it would be very difficult to control her to an extent that would allow her to be continually employed in her current occupation." It is unclear whether the "difficulty" to control [Ratliff] with medications is a reference to her failure to take medications, Dr. Antimisiaris'[s] belief that the heart condition is too serious to be treated with medication, or both. In [Ratliff's] expectations to the final order, she argues that no one disputed her statement at the hearing that syncope causes her to have dizzy spells lasting up to twenty (20) minutes. [Ratliff] argues that the dizziness also prevents her from driving her own car and caused her to break her arm. Furthermore, [Ratliff] has argued that she cannot receive a CDL because such cannot be issued to someone suffering from "impaired equilibrium or any neurological condition with potential for sudden incapacitation."

While [Ratliff] and [Retirement Systems] argue that the source of [Ratliff's] *syncope* is, respectively, her pre-

existing diabetes or a heart attack in 2013, neither submits objective medical evidence exclusively tying *syncope* to one or the other. However, [Ratliff's] cardiologist, Dr. Antimisiaris, did appear to strongly link *syncope* with [Ratliff's] diabetes. On February 7, 2013, he wrote a report that stated: "Neurocardiogenic *syncope*: improved orthostatic hypotension with better diabetic control. Still likely has some autonomic insufficiency from [diabetes mellitus] but [symptoms] have improved." Moreover, in light of the heavy burden placed on [Ratliff] and the lack of objective medical evidence showing the severity, permanence, and disabling nature of her syncope, the Court finds that such does not satisfy the requisite "so compelling" standard.

R. at 170-89 (emphases added) (record citations omitted).

The circuit court applied the correct standard of review and we cannot find fault with its analysis. It is fairly clear that Ratliff's syncope symptoms developed after her membership date. This does not mean, however, that Ratliff is automatically entitled to benefits if disabled by the syncope, because it is undisputed that her diabetes predated her membership date by several years. Pursuant to KRS 61.600(3)(d), benefits are only available if "[t]he incapacity does not result directly or indirectly from bodily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent." In other words, Ratliff bore the burden of establishing that her syncope was not the result of her diabetes.

In *McManus*, 124 S.W.3d at 455, our Court considered a similar case. After his membership date, McManus, a diabetic since the age of fifteen, began

-14-

suffering from a series of heart related problems and conditions. These conditions eventually required McManus to stop working. Thereafter, he applied for disability retirement benefits. His application was denied even though Retirement Systems stipulated that McManus met all the requirements for retirement disability under KRS 61.600(1) and (2) because it was determined that his disabling condition pre-existed his membership date. On appeal, a major issue concerned who bore the burden of proof with respect to whether McManus's pre-existing diabetes was the cause of his heart conditions. We first held that the hearing officer did not err in assigning McManus the burden of proof on the issue of causation related to a pre-existing condition. We then determined that while there was no conclusive evidence introduced either way, there was enough evidence in the record to support the denial of benefits.

> McManus had been coping with his diabetes for over 20 years at the time he became re-employed and his general condition indicates the multi-faceted and extensive effect it was having on him. In addition, he failed to present evidence suggesting other pre-dominant causes. Viewing the entire record, we believe there is substantial evidence to support a finding that McManus's incapacity was at least indirectly as a result of his pre-existing diabetes mellitus.

*Id.* at 459.

The same holds true in this case. As observed by the circuit court, neither party produced any conclusive medical evidence establishing that Ratliff's

-15-

diabetes caused her syncope. At best, the evidence was conflicting regarding whether Ratliff's diabetes caused her syncope. After weighing that evidence, the Board determined that Ratliff's "syncope is at least indirectly related to her poorly controlled diabetes according to numerous health care providers and, therefore, cannot be a basis for disability." Ratliff's medical records, including those from Dr. Ashby-Jones, Dr. Antimisiaris, and Pikeville Medical, support this conclusion. In the end, the Board found these records more persuasive than any evidence Ratliff presented to the contrary. Having reviewed the record, we agree with the circuit court that the evidence was not so compelling that no reasonable person could have failed to be persuaded that Ratliff's syncope was not caused indirectly by her pre-existing diabetes.

Ratliff, however, seems to believe that the pre-existing nature of her diabetes and its causative effect on her syncope is not the determinative issue. Citing *Kentucky Retirement Systems v. Wimberly*, 495 S.W.3d 141 (Ky. 2016), Ratliff argues that her diagnosis entitled her to benefits as a matter of law. Ratliff's reliance on *Wimberly* is misplaced. In denying Wimberly benefits, the Board of Trustees made two significant findings: "(1) [Wimberly's] preexisting abuse of alcohol contributed, at least indirectly, to his cardiac condition; and (2) he had not met his burden of proving that he is disabled." *Id.* at 148. As to the first issue, the Court noted that although two physicians stated that "Wimberly's heavy

-16-

drinking occurred in either the past or the remote past, neither of them stated that it occurred before Wimberly began his covered employment." *Id.* at 149. Ultimately, the Court concluded that no substantial evidence supported the Board's conclusion "that pre-existing alcohol abuse indirectly caused Wimberly's heart condition." *Id*. Only after making that conclusion did the Court move on to address whether the condition itself was disabling.

In contrast, in the present case, substantial evidence supports the Board's conclusion that Ratliff's pre-existing diabetes indirectly caused her syncope. As such, unlike the *Wimberly* Court, we do not advance on to the second issue, whether the condition had a disabling effect, because even if the condition was disabling, it is not one for which benefits can be awarded. KRS 61.600(3)(d).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the December 11, 2018, opinion and order of the Franklin Circuit Court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Lawrence R. Webster
Pikeville, Kentucky

BRIEF FOR APPELLEE:

Leigh A. Jordan Davis
Frankfort, Kentucky