**KENTUCKY RETIREMENT SYSTEMS, Appellant,**

v.

**Dillard Wayne BROWN (Individually and As Executor of the Estate of Barbara Faye Reed Brown, Deceased), Appellee.**

**and**

**Kentucky Retirement Systems, Appellant/Cross–Appellee,**

v.

**Tammy Sizemore, Appellee/Cross–Appellant.**

Nos. 2008–SC–000326–DG, 2008–SC–000898–DG, 2009–SC–000174–DG.

Supreme Court of Kentucky.

March 24, 2011.

Jennifer A. Jones, James Eric Wampler, Michael Todd Butler, Katherine I. Rupinen, Leigh Ann Jordan, Brian C. Thomas, Amy O'Nan Peabody, Frankfort, KY, Counsel for Appellant/Cross–Appellee, Kentucky Retirement Systems.

Joseph Hubert Mattingly, III, Mattingly, Nally–Martin, & Fowler, PLLC, Lebanon, KY, Counsel for Appellee, Dillard Wayne Brown.

Cordell Graham Martin, Salyersville, KY, Arden Winter Robertson Huff, Law Offices of John G. Prather, PSC, Somerset, KY, Counsel for Appellee/Cross–Appellant, Tammy Sizemore.

Opinion of the Court by Justice SCOTT.

This consolidated appeal primarily involves whether the Court of Appeals erred in holding that Appellee/Cross Appellant Tammy Sizemore (Sizemore) and Appellee, Barbara Faye Reed Brown[1] (Brown) carried their burden to prove that their conditions did not pre-exist membership with the Kentucky Retirement Systems. Finding no error on this issue, we affirm. We likewise affirm the Court of Appeals on the issue regarding Sizemore's total and permanent incapacity.

## I. Pre-existing Condition

### A. Background

#### 1. Kentucky Retirement Systems v. Brown

Barbara Brown became a member of the Kentucky Retirement Systems in March 1992, and approximately eleven years later, in 2003, filed for retirement benefits pursuant to KRS 61.600.[2] In her petition at the administrative level, Brown claimed total disability due to her diagnosis of Emphysema with Chronic Obstructive Pulmonary Disease (COPD).

As required by KRS 61.600, Brown offered evidence that her COPD did not pre-exist her membership, i.e., testimony from Dr. Mark Abram stating that: he specifi-

---

1. Appellee Brown is deceased and her claim is continued by her widower and executor of her estate, Dillard Wayne Brown.

2. Although KRS 61.600 contains several other requirements, we confine our consideration to the following pertinent parts of that statute which provides:

   (3) Upon the examination of the objective medical evidence by licensed physicians pursuant to KRS 61.665, it shall be determined that:

   (b) The incapacity is a result of bodily injury, mental illness, or disease. For purposes of this section, "injury" means any physical harm or damage to the human organism other than disease or mental illness;

   (c) The incapacity is deemed to be permanent; and

   (d) The incapacity does not result directly or indirectly from bodily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent. For purposes of this subsection, reemployment shall not mean a change of employment between employers participating in the retirement systems administered by the Kentucky Retirement Systems with no loss of service credit.

cally evaluated Brown's lungs on January 22, 1993 and that Brown did not exhibit "any indication that would provide any objective medical evidence that at that point in time [Brown] had COPD, emphysema, or any related condition"; in June 1993, there was no indication of COPD or emphysema; from 1993 until roughly 1995 or early 1996, he did not think that Brown had emphysema or COPD; in reviewing her file in 2003, he speculated that the approximate onset date for the emphysema and COPD was sometime in 1996.

In addition to Dr. Abram's testimony, Brown offered evidence showing that the first mention of her COPD or emphysema appeared in a medical report dated March 1998. Additionally, Brown offered records from Dr. Greg Walton, who, also in March 1998, noted that her x-rays indicated "changes suggesting chronic obstructive pulmonary disease with moderate ·... emphysema." However, Brown went further, and offered more evidence that in June 2000, Dr. Walton compared the x-rays taken in 1998 to new x-rays and remarked "lungs are clear ... no active disease." Finally, Brown produced medical documents demonstrating that her first *firm* diagnosis of COPD did not occur until February 1, 2001.

In spite of this plethora of evidence produced by Brown, the Kentucky Retirement System's Medical Review Board denied her benefits, concluding, *inter alia*, that her thirty-year smoking habit was a "condition which preexisted membership." In support of its decision, the Kentucky Retirement Systems relied on the recommendations of two physicians, Drs. Keller and McElwain, both of whom opined:

Dr. Keller:

> The records do confirm that the claimant has smoked significantly for 30 years or more. . . . After reviewing all of the claimant's records it is clearly evident

that this patient who is a 30 year smoker had long sense [sic] set the stage for ultimate pulmonary disease by virtue of her 3 decade smoking habit. On the bases [sic] of reasonable medical probability the claimant did have significant pulmonary disease at and prior to the onset of her employment in 1992.

Dr. McElwain: "[t]obacco abuse is noted to have been present for over 30 years. This would appear to establish the presence of obstructive pulmonary disease, at the time of her employment ..."

Based, in part, on the recommendations of Drs. Keller and McElwain, the hearing officer found that that Brown's impairments were "directly or indirectly caused by conditions pre-existing her membership ... and [could not] be a basis for her retirement on disability." Following subsequent adverse administrative rulings affirming this decision, Brown sought review in the Franklin Circuit Court.

The Franklin Circuit Court reversed the Kentucky Retirement Systems, finding, in part, that Brown's COPD did not pre-exist her membership. In a well-reasoned opinion, the circuit court held:

> The record is void of objective medical evidence to prove that Brown's COPD pre-existed her membership in the Kentucky Retirement Systems. The only objective medical evidence regarding the condition of Brown's lungs prior to her membership in Retirement Systems was gynecological records in 1976 and 1978 indicating that her lungs were clear and an x-ray from 1987 with the same indication. Retirement Systems respond that x-rays are a poor indicator of COPD but cannot point to objective medical evidence that Brown's condition actually existed prior to her membership.

The circuit court went on to reject the opinions of Drs. Keller and McElwain as

"conjecture," opining that Dr. McElwain's statements would lead to the conclusion "that every person that smoked prior to their state employment has COPD and cannot receive benefits." The circuit court also rejected the notion that articles offered by the Kentucky Retirement Systems "on Postgraduate Medicine and the internet . . . link[ing] smoking and COPD" were sufficient to demonstrate that COPD was pre-existing in this case. From that adverse ruling, the Kentucky Retirement Systems appealed to the Court of Appeals.

In affirming the Franklin Circuit, the Court of Appeals held that, as a matter of law, Brown proved that her COPD was not pre-existing. In reaching its decision the court held that the opinions of Drs. Keller and McElwain were "subjective retrospective diagnoses" and were not "couched in any degree of medical certainty." Yet, more important to the Court of Appeals was the fact that these conclusions were "contradicted by the contemporary objective medical records, x-rays and diagnoses by [Brown's] attending physicians." That court ultimately concluded that Dr. Keller's and Dr. McElwain's opinions were "based on nothing other than the fact that Mrs. Brown smoked before she started work. . . ." The court likewise agreed with the Franklin Circuit's conclusion that the scholarly medical articles alone did not link smoking and COPD in this case. In its opinion, a Contrary holding would allow the denial of disability benefits "to every applicant whose disability could be linked to smoking simply by presenting evidence that [she] smoked prior to employment."

### 2. *Kentucky Retirement Systems v. Sizemore*

Tammy Sizemore became a member in the Kentucky Retirement Systems in February 2000, and in January 2005, applied for disability retirement benefits pursuant to KRS 61.600. In her petition for disability, Sizemore claimed total and permanent disability as a result of her diagnosis of relapsing/remitting multiple sclerosis (MS).

As required by KRS 61.600, Sizemore offered evidence to show that her MS did not pre-exist her membership in the Kentucky Retirement Systems. Dr. Joseph Zerga, her treating neurologist, testified that he had "no indication in the medical records . . . that [Sizemore] had any problems prior to May of 2000." He further stated that in 2002, after a negative spinal tap, he ordered a MRI which was ultimately inconclusive of MS. And finally, when asked to reconstruct the progression of Sizemore's MS, he concluded that Sizemore's initial symptoms in May 2000 were "probably the primary attack."

However, the Kentucky Retirement Systems countered Sizemore's evidence with a scholarly article taken from the New England Journal of Medicine which posited that the average time until onset of symptoms in a patient with relapsing/remitting MS is approximately eleven years. 343 New Eng. J. Med. 20, 1430–38 (2000). Based on this article, and after reciting Dr. Zerga's findings, the Kentucky Retirement Systems reasoned that, because Sizemore experienced symptoms just three months into her enrollment, it was "highly likely that the disease process pre-existed her membership," and therefore denied Sizemore retirement benefits. Sizemore timely filed an action in Franklin Circuit Court seeking review of that decision.

The Franklin Circuit Court reversed the Kentucky Retirement Systems' determination that Sizemore's MS pre-existed her membership. In short, the circuit court held:

1. None of the reviewing physicians made a finding that Sizemore's MS was pre-existing.

2. The sole piece of evidence supporting the notion that Sizemore's MS was pre-existing came from a scholarly medical article.

3. Because the scholarly article was hearsay, and stood alone as the only evidence tending to show the pre-existing nature of Sizemore's condition, it must comply with KRS 13B.090(1), which states that, though hearsay evidence is admissible, "it shall not be sufficient *in itself* to support an agency's findings of facts unless it would be admissible over objections in civil actions." (emphasis added).

4. The medical treatise introduced did not comply with KRE 803(18) which only permits the introduction of learned treatises by reading them into evidence by a qualified expert "but may not be received as exhibits," and thus would have not been admitted over objection in a civil action.

5. The Kentucky Retirement Systems' finding that Sizemore's condition pre-existed her membership was a finding of fact and was not supported by substantial evidence.

Based on these findings of facts and conclusions of law, the circuit court reversed the administrative ruling on this issue. The Kentucky Retirement Systems then sought review in the Court of Appeals.

The Court of Appeals affirmed the circuit court, but on different grounds. In the court's opinion, the Kentucky Retirement Systems could not rely on any of Dr. Zerga's statements regarding the progress of "some other patients [sic] progress" as a basis for determining that Sizemore's condition pre-existed membership because the "issue here is not 'some other patients,' but *this* patient." The court further stated that the medical treatises were likewise insufficient for the same reason—essentially reasoning that the Kentucky Retirement

Systems did not link the article to Sizemore. As a result, the court found no substantial evidence to support the notion that Sizemore's MS pre-existed membership in the Kentucky Retirement Systems.

In addition to noting the inadequacies of the evidence offered by the Kentucky Retirement Systems, the Court of Appeals further recognized that Sizemore produced a preponderance of the evidence demonstrating that her MS was not pre-existing via the testimony of Dr. Zerga, her long-time treating neurologist. In the court's view, evidence showing "[t]he absence of any noted symptom is sufficient to meet the minimal burden of proving a negative," as was required by Sizemore's burden to prove that her condition was not pre-existing.

We granted discretionary review and consolidated these cases, and now affirm.

### B. Law

■ A member of the Kentucky Retirement Systems may seek disability benefits as a result of a total and permanent incapacitation via KRS 61.600. That statute outlines, *inter alia*, timing requirements and certain administrative procedures requisite to receive a disability retirement award. However, before an award may be had, it must be determined that "[t]he incapacity does not result directly or indirectly from bodily injury, mental illness, disease, or condition which pre-existed membership in the system or reemployment, whichever is most recent." KRS 61.600(3)(d). And although the statute does not explicitly allocate the legal burden of proving whether a condition pre-existed membership, we agree that it should be construed with KRS 13B.090(7), which addresses burdens in administrative proceedings, i.e.,

In all administrative hearings, unless otherwise provided by statute or federal

law, the party proposing the agency take action or grant a benefit has the burden to show the propriety of the agency action or entitlement to the benefit sought.... The party asserting an affirmative defense has the burden to establish that defense. The party with the burden of proof on any issue has the burden of going forward and the ultimate burden of persuasion as to that issue. The ultimate burden of persuasion in all administrative hearings is met by a preponderance of evidence, in the record. Failure to meet the burden of proof is grounds for a recommended order from the hearing officer.

A plain reading of KRS 13B.090(7) clearly shows that the party seeking the benefit bears the burden to show that he or she is entitled to that benefit. Moreover, the "placement of the pre-existing condition factor alongside and in the same subsection [in KRS 61.600(3)(d) ] as other threshold factors such as the existence of incapacity and permanency militates against treating it as a full-scale affirmative defense." *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454 (Ky.App. 2003). And, as with all the other threshold factors in KRS 61.600, the person seeking the entitlement determination must prove to the trier of fact that his or her condition was not pre-existing membership by a preponderance of the evidence. *Id.* at 458.

■ In reaching its determination whether a condition is pre-existing, the Kentucky Retirement Systems must base its decision under the guidance of KRS 61.600(3), which requires the evaluation of "objective medical evidence." Objective evidence, as defined by our legislature, means:

> reports of examinations or treatments; medical signs which are anatomical, physiological, or psychological abnormalities that can be observed; psychiatric signs which are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; or laboratory findings which are anatomical, physiological, or psychological phenomena that can be shown by medically acceptable laboratory diagnostic techniques, including but not limited to chemical tests, electrocardiograms, electroencephalograms, X-rays, and psychological tests[.]

KRS 61.510(33). And where the Kentucky Retirement Systems, in its role as a finder of fact, makes a factual determination based upon objective medical evidence, it must be afforded "great latitude in its evaluation of the evidence heard and the credibility of witnesses ..." including its findings and conclusions of fact. *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972).

■ In addition to the great deference given to the fact finder in this case, we note that, on appellate review, the "[d]etermination of the burden of proof also impacts the standard of review on appeal." *McManus*, 124 S.W.3d 454. We find the Court of Appeals decision in *McManus v. Kentucky Retirement Systems* best describes the appellate standard, and thus is worthy of our adoption, to wit:

> When the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people. Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in the party's favor is so compel-

ling that no reasonable person could have failed to be persuaded by it.

*Id. (citations omitted).*

Notwithstanding the great deference given to the administrative fact finder, as we have here, we also believe it necessary in this case to note why the legislature chose to exclude disability retirement benefits to individuals who have "pre-existing" conditions. We believe it clear that the legislature's intention was to prevent a fraud on the retirement systems, to prevent individuals from knowingly and intentionally filing for disability benefits based on conditions predating their enrollment. The Kentucky Retirement Systems was created to provide its employees with a safety net such that in the event they are injured or succumb to a disease while in the employment of the State, they are insured with disability retirement benefits.

■ Importantly, we do not believe it was the intent of the legislature to define as "pre-existing" those diseases and illnesses which lie dormant and are asymptomatic such that no reasonable person would have realized or known of their existence. This is particularly so given the fact that some diseases are genetic and may not surface for many years. Indeed, were we to analyze whether a genetic condition pre-exists membership in the Kentucky Retirement Systems, our conclusion would always be "yes" given the fact that our genes are composed long before employment. However, our common sense approach guides us in the opposite direction and once again aligns this Court with the maxim that courts should construe a statute according to its plain meaning, unless that meaning leads to an absurd result which is contrary to the intent of our legislative authority. *Johnson v. Branch Banking & Trust Co.*, 313 S.W.3d 557, 559 (Ky.2010). To allow the Kentucky Retirement Systems to deny disability retirement benefits based on the notion that a genetic disease, rooted in one's DNA, is pre-existing regardless of whether that disease is symptomatic prior to enrollment certainly qualifies as an absurd conclusion and would clearly defy the legislative intent of KRS 61.600.

We believe it the intent of our legislative authority to preclude from benefits those individuals who suffer from symptomatic diseases which are objectively discoverable by a reasonable person. We do not believe it the intent of the legislature in drafting KRS 61.600 to deny benefits to those individuals who suffer from unknown, dormant, asymptomatic diseases at the time of their employment, ailments which lie deep within our genetic make-up, some of which may not yet be known to exist. Rather, we believe the legislature intended to deny benefits to individuals whose diseases are symptomatic and thus were known or reasonably discoverable. Why else would the legislature have referred to "objective medical evidence" in KRS 61.600(3)? *See* KRS 446.015 ("All bills … shall be written in nontechnical language and in a clear and coherent manner using words with common and everyday meaning.").

With these guiding principles, we turn to the case at bar and agree that Brown and Sizemore provided sufficient evidence to prove their conditions did not predate enrollment in the Kentucky Retirement Systems. We further hold that no reasonable trier of fact could have failed to have been persuaded by that evidence.

### C. Analysis

#### 1. Kentucky Retirement Systems v. Brown

■ As noted above, Brown produced a voluminous medical record replete with evidence that she did not have COPD prior

to her enrollment in the Kentucky Retirement Systems. The only contrary medical evidence produced came in the form of two reviewing physicians, both of whom posited that her COPD was the result of her smoking habit. As such, the Kentucky Retirement Systems construed those medical opinions and found that, because Brown smoked prior to her enrollment and because her COPD was the result of smoking, her "condition" was one that pre-existed her membership. We disagree.

In light of the evidence produced in this case, we believe Brown has more than adequately satisfied her burden to show that her COPD did not predate her membership with the Kentucky Retirement Systems. We do not belabor the issue by reciting the plethora of evidence outlined above; suffice it to say the evidence is more than compelling and no reasonable trier of fact could have reached an opposite conclusion. Rather, we turn to the question of why the Kentucky Retirement Systems denied her claim, a ruling it based on an interpretation of the word "condition" as used in KRS 61.600.

In rejecting Brown's disability retirement benefits, the Kentucky Retirement Systems held that Brown's smoking was a pre-existing condition, and thus ruled that she was not entitled to benefits under KRS 61.600. We reject that notion.

The term "condition" and its use in KRS 61.600, is a matter of law, a question this court may answer *de novo*. We hold that smoking is not a condition as it is used under this statute, but rather a behavior. *Revenue Cabinet v. Hubbard*, 37

S.W.3d 717 (Ky.2000). Our conclusion finds support in the venerable doctrine of *ejusdem generis*, which we explained in *Steinfeld v. Jefferson County Fiscal Court*, 312 Ky. 614, 229 S.W.2d 319, 320 (1950):

[W]here, in a statute, general words follow or precede a designation of particular subjects or classes of persons, the meaning of the general words ordinarily will be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class, or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose.

Here, the word "condition" follows the words bodily injury, mental illness, and disease. KRS 61.600(3)(d). Thus, interpreting "condition" as of the same kind or nature as the terms "bodily injury," "mental illness," and "disease," we cannot conclude that the word "condition" encompasses "behavior." [3]

Therefore, because Brown sufficiently demonstrated that her condition did not pre-date enrollment in the Kentucky Retirement Systems and because the Kentucky Retirement Systems misconstrued the term condition to encompass behavior, we hold that it erroneously denied her benefits and affirm the Court of Appeals in this regard.

## 2. *Kentucky Retirement Systems v. Sizemore*

Like Brown, Sizemore provided evidence to prove that her Multiple Sclerosis did not pre-date her membership in the Kentucky Retirement Systems. The only

---

3. In an alternative reasoning, the Court of Appeals, citing KRS 344.040, held that, by defining "condition" to include behavior, the Kentucky Retirement Systems ran awry of "the legislative policy prohibiting discrimination against employees merely "because the individual is a smoker." While we agree that

the legislature did not intend "condition" to encompass "behavior" and we agree that there is an intent to protect smokers with regard to employment in KRS 344.040, we find it unnecessary to strain such a public policy holding in this case.

counter evidence offered by the Kentucky Retirement Systems came in the form of a learned, scholarly treatise which was introduced unaided by explanation of a medical expert.

We again find it unnecessary to reiterate the medical evidence produced by Sizemore, which tended to show that her MS was not pre-existing. It too was enough to carry the burden of a preponderance of evidence in this case and we believe no reasonable trier of fact could have rejected this evidence standing alone.

We do, however, find it necessary to address the correctness of the Kentucky Retirement Systems' decision to deny benefits to Sizemore based upon a scholarly medical article, and consequently the Court of Appeals decision in this regard.

A medical treatise or article alone, written in the abstract or concerning another patient, is never sufficient to qualify as objective medical evidence. KRS 13B.090(1); KRE 803(18). Its authority may, however, be pertinent to an administrative trier of fact to the extent that it helps to understand medical concepts, terminology, or theories, but only to the extent to which they apply to the present case. As is pertinent here, a medical treatise relied on by a reviewing physician may have been properly reliable where that medical expert links the article to the physician's review of the objective evidence. Where that link is absent, the treatise is irrelevant, as it neither proves nor disproves anything with regard to the case/patient at hand; rather it deals with statistics or methodologies on a larger scale.

Here, no physician but Dr. Zerga passed on whether Sizemore's condition pre-existed her membership, and he testified that he thought it did not. The only authority for which the Kentucky Retirement Systems relied on in reaching the opposite conclusion came in the form of a medical treatise which theorized the normal development of MS is approximately eleven years. Given its bald admission into evidence, and the fact that no medical authority linked the article's conclusions or theories to Sizemore, it was wholly insufficient to demonstrate that Sizemore's MS pre-existed membership or that she knew of or should reasonable have known it. We therefore hold that it was error for the Kentucky Retirement Systems to rely on the medical treatise as counter evidence regarding whether Sizemore's MS pre-existed membership.

Therefore, because we hold that Sizemore properly carried her burden, and because the Kentucky Retirement Systems improperly relied on the medical article in this case, we affirm the Court of Appeals on this issue.

Having determined the issues common among Brown and Sizemore, we now turn to the question unique to Sizemore's appeal.

## II. Sizemore's Total and Permanent Incapacitation

As also required by KRS 61.600, Sizemore bore the burden to show that she was permanently incapacitated to perform her job or job like duties. And as part of her efforts to do so, Sizemore again offered the testimony of Dr. Zerga, who stated in part:

> My opinion is I think she could sit if she didn't have to do anything else; if she didn't have to interact with people, if she didn't have to make cognitive processing decisions, if she didn't have to fill out paperwork, if she didn't have to do repetitive data entry.... But, as far as being able to perform the functions of her job, no, sir.

Dr. Zerga based his opinion regarding total disability, in part, on his conclusion that Sizemore suffered from chronic fatigue, a condition he testified frequents patients with MS. What is more, Dr. Zerga, relying on a medical article from the National MS Society, noted that fatigue is the most common reason for MS patients to depart the work force. He further testified that fatigue with MS patients is a "rather constant symptom," and is different from normal fatigue, which normally may be resolved by taking a nap or sitting down.

However, the Kentucky Retirement Systems interpreted Sizemore's medical records differently, and held that she was not entitled to benefits because she was not totally and permanently disabled. In its view, Dr. Zerga's notes demonstrated Sizemore's lack of total and permanent disability, i.e.: (1) a report from Dr. Zerga dated March 5, 2005 (days after Sizemore's last pay period) indicating that Sizemore was doing well, with "no evidence of any attacks," and her examination was normal; (2) a report from Zerga on January 10, 2005 where Dr. Zerga noted complaints of fatigue and numbness, but no cranial nerve symptoms and no significant upper extremity symptoms and ultimate impression as stable; (3) an MRI dated January 10, 2005, revealing some white matter, "some just seen," but not definitely active; (4) a nerve conduction study dated January 17, 2005 showing very mild bilateral carpal tunnel, with no evidence of major entrapment and notes from Zerga stating that he was going to alter her medication to see if he could improve her sleep and decrease her fatigue. Based on this alone, the Retirement Systems' Board of Trustees adopted the reasoning of the hearing officer (concluding that Sizemore's MS was pre-existing) and added a finding of fact that she was not permanently and totally unable to work.

On review, the Franklin Circuit Court reversed the administrative ruling, holding the Board of Trustees' assessment of Sizemore's total and permanent incapacitation as "a misinterpretation of KRS 61.600 or a misunderstanding regarding the nature of relapsing/remitting MS." The circuit court reasoned that Dr. Zerga's reports constituted objective medical evidence supporting Sizemore's total and permanent incapacitation and that "[s]o long as a doctor bases those judgment calls on observable facts, and the doctor is trained to make such judgments, the Board cannot disregard those judgments on the grounds that they are 'subjective.'" In contrast, the circuit court considered the reports of Drs. McElwain and Keller as unsupported by "objective medical evidence" and further found that their opinions, which countered Zerga's conclusions, contained "absolutely no medical or factual basis." As a result, the circuit court concluded "[t]he record compels a finding that Tammy Sizemore is totally and permanently disabled, and thus entitled to disability benefits." From that adverse decision, the Kentucky Retirement Systems sought review in the Court of Appeals.

The Court of Appeals reversed the circuit court, reasoning that there was evidence to support the notion that Sizemore was not permanently and totally incapacitated. The court relied on Dr. Kimbel's determination that "no evidence objectively existed proving any loss of cognitive function, any functional impairment imposed by multiple sclerosis consisting of any weakness, extreme dizziness, visual impairment, or loss of function of her upper and lower extremities." And although not directly correlating the objective medical evidence to Dr. Kimbel's conclusions, the court referenced Dr. Zerga's notes, recorded approximately four days after Sizemore's last date of paid employment, which stated that Sizemore was "doing well, although she was feeling a bit de-

pressed and did not like her job" and "no evidence of any attacks." Furthermore, the court noted that in January 2005, approximately one month before she stopped working, Dr. Zerga stated that Sizemore "was fatigued but had no cranial nerve symptoms or significant upper extremity symptoms and her examination was benign other than right arm tremors." And while the Court of Appeals recognized that there was contrary testimony from Dr. Zerga, it ultimately held that where a conflicts exists the administrative body's ruling should be given deference, unless the evidence "is so overwhelming that their conclusions are unreasonable."

Given the conflicting medical opinions on this issue, we cannot say that the Kentucky Retirement Systems acted erroneously. As noted above, we give great latitude in its evaluation of the evidence heard and the credibility of witnesses, including its "findings and conclusion of fact." *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298 (Ky.1972). Unlike the issue of pre-existing condition, the Kentucky Retirement Systems had reason to find that Sizemore was not totally disabled, e.g., the conflicting medical testimony. *Kentucky Comm'n On Human Rights v. Fraser*, 625 S.W.2d 852 (Ky.1981). While this Court may have come to a different conclusion, we are constrained not to substitute our judgment for the fact finder unless we can determine that no reasonable trier of fact could have made the same conclusion. *R.R. Comm'n v. Chesapeake & Ohio Railway*, 490 S.W.2d 763 (Ky.1973). We cannot agree that no reasonable trier of fact could have reached the Kentucky Retirement System's conclusion. We therefore affirm the Court of Appeals on this issue as well.

### III.   Conclusion

For the foregoing reasons, we affirm the Court of Appeals in both of these consolidated cases.

All sitting.   MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCHRODER, and VENTERS, JJ., concur.

NOBLE, J., concurs in result only.