RENDERED:  JANUARY 29, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0786-MR

KELLY SHAY NEAL                                                                                     APPELLANT


                                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                                  HONORABLE PHILLIP J. SHEPHERD, JUDGE
                                    ACTION NO. 18-CI-00330


KENTUCKY RETIREMENT SYSTEMS AND
BOARD OF TRUSTEES OF KENTUCKY
RETIREMENT SYSTEMS                                                                      APPELLEES


<u>OPINION</u>
<u>AFFIRMING</u>

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

JONES, JUDGE:  The Appellant, Kelly Shay Neal, appeals a decision by the

Franklin Circuit Court affirming a decision by the Kentucky Retirement Systems

("Retirement Systems") to deny Neal's application for disability retirement

benefits.  Having reviewed the record and being otherwise sufficiently advised, we

likewise AFFIRM.

# I. BACKGROUND AND PROCEDURAL HISTORY

Neal was born on August 1, 1978. She was formerly employed as an Administrative Specialist II by the Energy and Environment Cabinet's Department of Environmental Protection, Division of Waste Management, Hazardous Waste Branch (the "Branch"). Neal's reemployment was November 1, 2002, and her last day of paid employment was December 31, 2013. As of her last day of paid employment, Neal was 35 years old and had 166 months (13.8 years) of accumulated service credit.

As an Administrative Specialist II, Neal worked 37.5 hours a week. Neal's job was classified as sedentary, and her duties consisted of preparing and copying public notices for mailing, preparing labels and envelopes, contacting the media, typing and writing standard operating procedures, electronically filing and scanning documents, serving as the Branch's training coordinator, and handling all aspects of public notices for the Branch. Neal testified that she spent approximately one and a half hours of her typical workday standing or walking, while the other six were spent sitting; however, her employer reported that Neal was seated the entire day.

Neal requested a number of accommodations throughout the course of her employment due to her medical conditions: that another employee take the public notice administrative records to the library; to hang a curtain in her doorway

for privacy if she needed to lay down or needed more darkness; that she be allowed to bring in a mat or bean bag to lay on; taller cubicle walls; that the fluorescent lights in her office be turned off and to have dimmed lighting; a new ergonomic chair; no lifting greater than five pounds; and a wrist rest for typing. All of these requests were granted.

Following her last day of paid employment, Neal applied for disability retirement benefits pursuant to KRS[1] 61.600. Neal initially alleged disability due to post-traumatic stress disorder ("PTSD"), fibromyalgia, chronic fatigue syndrome, anxiety disorder, depression, osteoarthritis, back surgery/spinal stenosis, degenerative disc disease, interstitial cystitis, chronic migraines, multiple dental surgeries and procedures, and carpal tunnel syndrome.[2] When describing how these conditions were disabling, Neal wrote: "Unable to work regularly. Unable to function at full capacity, cognitive issues, sleep disorder, debilitating migraines and chronic pain, unable to perform basic daily task [sic]." Neal indicated that the onset of her musculoskeletal pain and migraines occurred in October 2007 as a result of low back injuries she sustained in a 2007 motor vehicle accident. Neal

---

[1] Kentucky Revised Statutes.

[2] Neal has since abandoned her disability claim with regards to her PTSD, anxiety disorder, and dental procedures.

testified that her cystitis began prior to the accident and that she was treated with bladder surgery in 2006.

Upon initial review, a majority of the Medical Review Board denied Neal's application for benefits. The Medical Review Board was comprised of three physicians: Dr. William Keller, Dr. Donald Merz, and Dr. Nancy Mullen. Dr. Keller recommended a one (1) year approval of benefits because Neal's psychological problems prevented her from functioning consistently in her job. Dr. Merz recommended denial of benefits because Neal's repeated neurological exams were normal, repeated evaluations revealed no significant musculoskeletal impairment, and her cystitis, chronic migraines, and carpal tunnel syndrome were all treatable conditions that are not a basis for disability. Dr. Merz suggested that Neal should submit a functional capacity evaluation. Dr. Mullen also recommended denial of benefits because she found Neal's pre-existing psychological conditions to be responsible for her disability. Dr. Mullen noted that a June 22, 2012, post-operative MRI of Neal's lumbar spine showed no evidence of disc protrusion, spinal stenosis, lateral recess stenosis, or abnormalities lateralizing to the symptomatic left side.

On September 28, 2015, Neal submitted another application for benefits to Retirement Systems, which she later supplemented with additional medical records and a list of her medications. Neal's application was again

reviewed by the Medical Review Board, this time consisting of three new doctors: Dr. William Duvall, Dr. John Albers, and Dr. Michael Growse.

The Medical Review Board unanimously rejected Neal's application for benefits. Dr. Duvall recommended denial of benefits based on his determinations that Neal's PTSD, anxiety, and depression were preexisting conditions and that Neal's fibromyalgia, fatigue, migraines, cystitis, carpal tunnel, and low back pain were not severe enough to support a disability claim. Dr. Growse recommended denial of benefits because he found no evidence that Neal's orthopedic conditions had resulted in a functional capacity restriction that did not accommodate her sedentary position and because Neal had not submitted any functional capacity evaluations. Dr. Albers recommended denial of benefits because Neal had been accommodated to the extent that she was not totally disabled and incapacitated from performing her job or one of a similar nature.

After her second denial, Neal requested an administrative hearing, at which time the parties filed additional employment and medical records, and Neal's claim was assigned to a hearing officer. The administrative hearing was conducted on July 11, 2017, at which Neal was the only witness. On January 15, 2018, the hearing officer issued his Findings of Fact, Conclusions of Law, and Recommended Order. The hearing officer explained that there were no functional

capacity evaluations[3] to show Neal's inability to perform her sedentary job as accommodated by her employer and questioned Neal's credibility. The hearing officer made the following specific findings:

> 10. . . . [Neal] <u>has not</u> shown by a preponderance of the objective medical evidence that her **back surgery, spinal stenosis, and degenerative disc disease (DDD)** permanently incapacitated her from doing a sedentary duty job or jobs of like duties since her LDOPE [last day of paid employment] and the twelve months immediately following. In 2007, [Neal] was involved in a [motor vehicle accident ("MVA")]. X-rays showed pars defect present at L5-S1 without anterior slip of the discs and the disc were well maintained. In January [2009], Dr. Vascello administered lumbar facet injections. In February 2009, a CT scan of the lumbar spine showed minimal disk [sic] bulge, no canal stenosis or neuroforaminal stenosis and bilateral pars defects at L5 without spondylolisthesis. In October 2009, [Neal] had lumbar fusion at L4-5 and L5-S1. Medical records following the surgery showed positive. In May 2010, Dr. Brown charted chronic back pain was much improved after the lumbar fusion. In 2012 and 2011, Dr. Wainwright noted improvement following the surgery. A June [2012] lumbar MRI showed normal other than postoperative changes. There was no evidence of disc protrusion, spinal stenosis or abnormalities to the symptomatic left side. Cervical spine x-rays in 2012 showed unremarkable. Dr. Vascello noted excellent results in July 2012 and noted complete resolution of the previous severe lower extremity and lower back pain following the 2009 lumbar fusion. [Neal] testified that she was not advised to stop working due to the back condition.

---

[3] The hearing officer noted that Neal did submit functional-capacity-evaluation-type statements for her hearing, but all three statements were completed in late 2015 or early 2016. Additionally, one of these evaluations was incomplete.

[Neal] has not shown by a preponderance of the objective medical evidence that her **osteoarthritis, fibromyalgia, [and] chronic fatigue syndrome** conditions permanently incapacitated her from a sedentary duty job or job of like duties since her LDOPE and the twelve months immediately following. In November 2012, Dr. Brown's [sic] performed a complete joint examination which showed full [range of motion] in shoulders, wrists, elbows, and hands, good flexion in the hips and normal strength testing. The DDD, low back pain and chronic fatigue all showed stable. The fibromyalgia condition also showed improved on medications in August 2012. In July 2013, medical records from Dr. Brown who diagnosed the osteoarthritis showed normal physical examinations, stable fibromyalgia, stable fatigue, stable DDD, and stable low back pain. Following the LDOPE in April 2014, Dr. Brown opined the fibromyalgia was stable and the low back was improved and more tolerable with medication. Dr. Brown noted in March 2014 that the fatigue had been stable. [Neal] was given work restrictions for the conditions and employer met all restrictions with reasonable accommodations.

[Neal] has not shown by a preponderance of the objective medical evidence that her **chronic migraines** permanently incapacitated her . . . . [Neal] testified the first problem with the condition was in 2007. Dr. Robertson treated her after 2011 with occipital nerve blocks every three months which provided relief for about two months. Dr. Robertson opined [Neal] had "excellent benefits" from the nerve blocks. Prior to 2013 [Neal] had one migraine per week which lasted one to three days. [Neal] had work restrictions of being off intermittently and no fluorescent lighting, but there was no recommendation to stop working. The medical testing showed a negative CT scan in 2011, cervical spine flexion-extension x-rays were negative in 2012, and a brain MRI in 2012 showed normal with no acute process. [Neal] had bilateral nerve blocks in May 2011 with only 1-2 migraines in the two months following; two

migraines per month lasting 1-2 days in May 2012; and reported good response to treatment with nerve blocks, trigger point injections and employer's accommodations in March 2013. The 2013 opinion was only nine months prior to the LDOPE and noted about one migraine headache per month. The records showed only two nerve blocks in the year following her LDOPE. In March 2014, Dr. Robertson completed an FMLA [Family and Medical Leave Act, 29 United States Code ("U.S.C.") § 2601 *et seq.*] form for intermittent leave for debilitating migraine headaches. He noted the frequency at 1-3 times per months and 4 hours to 2 days in length. The request by [Neal] and supported by physician was only for intermittent leave and not a request for permanent leave. In addition, employer had granted all requested reasonable accommodations for the condition. [Neal] testified that she was not advised to stop working due to the condition.

[Neal] has not shown by a preponderance of the objective medical evidence that her **carpal tunnel (CTS)** permanently incapacitated her . . . . [Neal] testified that the condition started after 2010 and her last treatment was in 2013. There was no surgery or planned surgery. There was no NVC study. Wrist splints were recommended and ergonomical desk and typing center were provided. There was no recommendation to stop working due to the condition. [Neal] testified that she was not advised to stop working due to the condition.

[Neal] has not shown by a preponderance of the objective medical evidence that her **interstitial cystitis** permanently incapacitated her . . . . [Neal] had surgery in September 2006 which helped the symptoms. The condition was episodic and intermittent. [Neal] had flareups [sic] about four times per year and employer allowed her intermittent time off due to the condition. The employer also allowed [Neal] constant [access] to a bathroom as required by the work restrictions. The

> condition was accommodated and medically managed with medications managed diet [sic].

Record ("R.") at 20-23 (emphasis in original).

Although Neal filed her exceptions to the recommended order on February 1, 2018, the hearing officer's recommended order was ultimately adopted with one typographical correction by the Disability Appeals Committee of the Board of Trustees ("the Board"). Neal then filed a petition for judicial review of the Board's final order with the Franklin Circuit Court pursuant to KRS 13B.140 and KRS 61.665. On March 28, 2019, the circuit court affirmed the Board's final order. The circuit court concluded that:

> The Committee relied on substantial evidence in finding that [Neal] was not permanently mentally or physically disabled as of her last date of paid employment by her PTSD, fibromyalgia, chronic fatigue syndrome, anxiety and depression, osteoarthritis, back surgery, spinal stenosis, degenerative disc disease, interstitial cystitis, chronic migraines, . . . and carpal tunnel syndrome. Even considering the cumulative impact of those conditions, [Neal] did not carry her burden to show that she was unable to perform her sedentary job duties, with the accommodations made by the Cabinet. There is some evidence that [Neal] suffers from various conditions such as fibromyalgia, chronic fatigue syndrome, and migraines, and that she was treated for numerous conditions following a 2007 motor vehicle accident. Still, the Court finds that there is not evidence in the record "so compelling that a reasonable person could fail to be persuaded" that her conditions, either individually or cumulatively, are permanently disabling and not pre-existing. *McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 458 (Ky. App. 2003); KRS 61.600.

-9-

Moreover, there is no substantial evidence that her pre-existing conditions were substantially aggravated by an accident or injury arising out of the course of employment.

R. at 214.

This appeal followed.

## II.    STANDARD OF REVIEW

The administrative review process terminates when the Board issues a final order, which "shall be based on substantial evidence appearing in the record as a whole and shall set forth the decision of the board and the facts and law upon which the decision is based." KRS 61.665(3)(d). The *McManus*[4] standard, in conjunction with KRS 13B.150, provides the standard for judicial review of the Board's decision. *Kentucky Retirement Systems v. Ashcraft*, 559 S.W.3d 812, 819 (Ky. 2018).

Judicial review begins within the framework of KRS 13B.150(2), which provides:

> (2) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the final order or it may reverse the final order, in whole or in part, and remand the case for further proceedings if it finds the agency's final order is:
>
> (a) In violation of constitutional or statutory provisions;

---

[4] *McManus*, 124 S.W.3d at 458.

-10-

(b) In excess of the statutory authority of the agency;

(c) Without support of substantial evidence on the whole record;

(d) Arbitrary, capricious, or characterized by abuse of discretion;

(e) Based on an *ex parte* communication which substantially prejudiced the rights of any party and likely affected the outcome of the hearing;

(f) Prejudiced by a failure of the person conducting a proceeding to be disqualified pursuant to KRS 13B.040(2); or

(g) Deficient as otherwise provided by law.

*Id.*

When an appellant alleges that the Board's decision is not supported by sufficient evidence, the reviewing court must first consider whether the denial is supported by substantial evidence. If it is not so supported, the court is required to reverse pursuant to KRS 13B.150(2)(c) and KRS 61.665(3)(d) regardless of who bore the burden of proof before the Board. *Bradley v. Kentucky Retirement Systems*, 567 S.W.3d 114, 119 (Ky. 2018).

If the reviewing court determines that there is some substantial evidence to support the decision, it then must apply the *McManus* standard, which

is predicated on which party bore the burden of proof at the administrative level.

*Ashcraft*, 559 S.W.3d at 817.

> Determination of the burden of proof also impacts the standard of review on appeal of an agency decision. When the decision of the fact-finder is in favor of the party with the burden of proof or persuasion, the issue on appeal is whether the agency's decision is supported by substantial evidence, which is defined as evidence of substance and consequence when taken alone or in light of all the evidence that is sufficient to induce conviction in the minds of reasonable people. *See Bourbon County Bd. Of Adjustment v. Currans*, Ky. App., 873 S.W.2d 836, 838 (1994); *Transportation Cabinet v. Poe*, Ky., 69 S.W.3d 60, 62 (2001) (workers' compensation case); *Special Fund v. Francis*, Ky., 708 S.W.2d 641, 643 (1986). Where the fact-finder's decision is to deny relief to the party with the burden of proof or persuasion, the issue on appeal is whether the evidence in that party's favor is so compelling that no reasonable person could have failed to be persuaded by it. *See Currans, supra*; *Carnes v. Tremco Mfg. Co.*, Ky., 30 S.W.3d 172, 176 (2000) (workers' compensation case); *Morgan v. Nat'l Resources & Environ. Protection Cabinet*, Ky. App., 6 S.W.3d 833, 837 (1999).

*McManus*, 124 S.W.3d at 458.

As the *Bradley* Court explained, the distinction *McManus* accounts for is the more deferential role that the appellate court should apply when reviewing and assessing the evidence.

> Preponderance of the evidence is the applicant's burden of proof before the hearing officer and Board, while the "compelling evidence" standard in *McManus* is a judicial standard of review applied by the court after the administrative process has concluded. As noted

> repeatedly, it is a high standard because of the deference owed the administrative fact-finder. If courts re-applied the preponderance of the evidence standard, they would be assessing the evidence and weighing it *de novo*, in direct violation of KRS 13B.150(2)'s directive that courts "shall not" substitute their judgment for the fact-finder on issues of fact.

*Bradley*, 567 S.W.3d at 120.

### III.   ANALYSIS

Neal's application for disability retirement benefits was predicated on numerous alleged conditions, including her PTSD, fibromyalgia, chronic fatigue syndrome, anxiety disorder, depression, osteoarthritis, back surgery/spinal stenosis, degenerative disc disease, interstitial cystitis, chronic migraines, multiple dental surgeries and procedures, and carpal tunnel syndrome. For the purposes of this appeal, Neal is no longer pursuing disability benefits for her PTSD, anxiety, and depression, and dental surgeries. As for her other conditions, Neal asserts that they did not arise until her motor vehicle accident in 2007 and therefore cannot be considered pre-existing. She also maintains that her health conditions are permanently disabling based upon their cumulative effect.

"A member of the Kentucky Retirement Systems may seek disability benefits as a result of a total and permanent incapacitation via KRS 61.600." *Kentucky Ret. Sys. v. Brown*, 336 S.W.3d 8, 13 (Ky. 2011). KRS 61.600(3)(d) provides that to be qualified for disability benefits, a claimant with less than

sixteen (16) years of service credit with employers participating in the retirement systems administered by Retirement Systems must show that her incapacity did not result directly or indirectly from bodily injury, mental illness, disease, or condition which pre-existed her membership in the system or reemployment, whichever is most recent. KRS 61.600(4)(b). A "pre-existing condition" is a bodily injury, disease, or illness that is "symptomatic and thus . . . known or reasonably discoverable" to an individual at the time of employment. *Brown*, 336 S.W.3d at 15. Because Neal has less than sixteen (16) years of service credit, consideration of pre-existing conditions is required.

> KRS 13B.090(7) plainly states that the claimant bears the burden of proving his entitlement to a benefit by a preponderance of the evidence. In claims brought under KRS 61.600, this includes the burden of establishing that the condition did not exist at the time the claimant became a member of the Systems. There is nothing in either statute to support the conclusion that the claimant must only make a threshold showing. The Systems may or may not present evidence to rebut the claimant's proof. Regardless, the burden does not shift to the Systems.

*Kentucky Ret. Sys. v. West*, 413 S.W.3d 578, 581 (Ky. 2013).

"In reaching its determination whether a condition is pre-existing, the Kentucky Retirement Systems must base its decision under the guidance of KRS 61.600(3), which requires the evaluation of 'objective medical evidence.'" *Brown*, 336 S.W.3d at 14. Objective medical evidence is defined as:

reports of examinations or treatments; medical signs which are anatomical, physiological, or psychological abnormalities that can be observed; psychiatric signs which are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; or laboratory findings which are anatomical, physiological, or psychological phenomena that can be shown by medically acceptable laboratory diagnostic techniques, including but not limited to chemical tests, electrocardiograms, electroencephalograms, X-rays, and psychological tests[.]

KRS 61.510(33).

Neal contends she has met her burden of proof because "none of [her] medical records prior, or even subsequent to [Neal's 2002 reemployment] date so much as hint of any pre-employment condition that might have any causal relationship to any of the conditions responsible" for Neal's medical state. Appellant's Br. at 14. Neal claims without citation that "every provider of record established the date of Neal's October 2007 auto accident as the onset of her fibromyalgia, osteoarthritis, and migraine headaches."[5] *Id*. Neal argues that her hearing testimony and her 2007 medical records show that her conditions began after her October 2007 accident.

---

[5] Additionally, there is no evidence to suggest that Neal's examining physicians, Drs. Robertson, Brown, Kiefer, and Vascello, were provided with Neal's medical records contemporaneous to and dated prior to her reemployment date.

Neal presented only one medical record pre-dating her November 1, 2002, reemployment date. This record, dated July 18, 2001, from Frankfort Regional Hospital involved early labor. Upon review of Neal's record, the hearing officer reasoned, "[t]he one record does not meet the burden of preponderance of the evidence in KRS 13B.090(7) or a 'plethora of evidence' referred to in *Brown v. Retirement Systems*, 336 S.W.3d [at 11.]" Hearing Officer's Findings of Fact, Conclusions of Law, and Recommended Order at 14-15. As the circuit court noted:

> In her exceptions to the Hearing Officer's Recommended Order, [Neal] states that the Hearing Officer cannot identify any medical records related to many of her supposedly pre-existing conditions generated before August 2007. . . . However, the burden is on [Neal] to show that she did not know or have any reason to know that she had pre-existing, disabling conditions; such a burden is difficult to carry when she has submitted a dearth [of] medical records predating her employment. Because she bore the burden of proof and had the ability to obtain and submit her own medical records, a lack of older medical records demonstrating the earlier absence of these conditions falls against [Neal] rather than the Committee.

R. at 212.

Moreover, there is evidence to suggest that Neal's musculoskeletal issues actually began prior to her October 19, 2007, auto accident. A treatment note from Women's Care of the Bluegrass dated three (3) months prior to Neal's accident indicates that Neal was symptomatic for sciatica, and a treatment note

from Dr. J. Rick Lyon dated August 27, 2007, recorded that Neal was assessed with lumbar disc disorder, contusion of the back, and backache unspecified. Neal reported to Dr. Lyon that her discomfort was a ten on a scale of one to ten with the symptoms aggravated by walking, activity in general, standing, running, and stairs. A September 12, 2007, physical therapy note indicates that Neal had been complaining of lower back pain since June 9, 2007.

We agree with the circuit court that Neal failed to meet her burden of proof by a preponderance of the evidence by failing to submit the necessary pre-membership records. *West*, 413 S.W.3d at 582-83. Neal's subjective testimony and contradictory records from 2007 cannot satisfy the *West* standard. The burden of proof cannot be relaxed based upon the nonexistence of the necessary medical records. *Id.* Neal has not sufficiently demonstrated that her conditions did not pre-date her enrollment in Retirement Systems. *See Brown*, 336 S.W.3d at 17.

Neal maintains that the Board's denial of her application for disability benefits was not supported by substantial evidence and further that her evidence was so compelling that no reasonable person could fail to be persuaded. She argues that she presented "uncontradicted" evidence proving her cumulative disability. We agree with the Franklin Circuit Court that the hearing officer addressed all medical records presented and based its decision upon the totality of

the evidence when considering the combined effect of Neal's impairments as implicitly required by KRS 61.600.

KRS 61.600 requires Neal to "[bear] the burden to show that she was permanently incapacitated to perform her job or job like duties." *Brown*, 336 S.W.3d at 17. Neal must prove that the "cumulative effect" of all her medical problems render her totally and permanently disabled "based on objective medical evidence, as well as her 'residual functional capacity and physical exertion requirements.'" *Kentucky Ret. Sys. v. Bowens*, 281 S.W.3d 776, 780 (Ky. 2009). An impairment is permanent "if it is expected to result in death or can be expected to last for a *continuous* period of not less than twelve (12) months from the person's last day of paid employment in a regular full-time position." KRS 61.600(5)(a)(1) (emphasis added). "The determination of a permanent incapacity shall be based on the medical evidence contained in the member's file and the member's residual functional capacity and physical exertion requirements." KRS 61.600(5)(a)(2). KRS 61.600(5)(b) provides that a disability claimant's residual functional capacity:

> shall be the person's capacity for work activity on a regular and continuing basis. The person's physical ability shall be assessed in light of the severity of the person's physical, mental, and other impairments. The person's ability to walk, stand, carry, push, pull, reach, handle, and other physical functions shall be considered with regard to physical impairments. The person's ability to understand, remember, and carry out

-18-

instructions and respond appropriately to supervision, coworkers, and work pressures in a work setting shall be considered with regard to mental impairments. Other impairments, including skin impairments, epilepsy, visual sensory impairments, postural and manipulative limitations, and environmental restrictions, shall be considered in conjunction with the person's physical and mental impairments to determine residual functional capacity.

KRS 61.600(5)(b).

Although medical evidence exists to support Neal's claims of permanent physical disability, five out of six medical examiners that reviewed her file recommended denial. To support their denial, the medical examiners noted the sedentary nature of Neal's position, the extensive accommodations granted by Neal's employer, and Neal's numerous "normal" medical exam results. Further, Neal's medical records indicated that the majority of Neal's treating physicians were pleased with the treatment and the accommodations granted to manage her conditions in 2013.

Neal relies upon her medical records pre-dating her December 31, 2013, last day of paid employment, FMLA forms for intermittent leave, Medical Source Statements, and attendance records to support her cumulative disability claim. Neal contends that the evidence supporting her permanent disability is "uncontroverted," and yet she testified that she was not advised to stop working due to her back condition or migraines. On October 11, 2012, Neal informed Dr.

Vascello that her 2009 lumbar fusion almost completely resolved her previously severe low back pain. Just nine months prior to her last day of paid employment, Dr. Robertson noted that injections worked "wonderfully" for Neal's migraines. Medical records from Dr. Brown dated August 24, 2012, November 20, 2012, April 22, 2013, and July 22, 2013, show normal physical examinations, stable fibromyalgia, stable fatigue, stable degenerative disc disease, and stable chronic low back pain.

The FMLA forms completed by Drs. Robertson and Brown show that Neal's migraines and musculoskeletal pain were intermittent and episodic in nature. All three of Neal's FMLA forms were applications for intermittent leave, not continuous leave. Dr. Brown and Dr. Robertson noted that Neal's musculoskeletal pain and migraines would cause episodic flare-ups that would periodically prevent Neal from performing her duties. Dr. Brown noted specifically:

> [Neal] has severe debilitating migraines that make it difficult to function in any capacity on the job. These occur on average 1-2 per month and may last 1-3 days. She also has less severe migraines as well as tension headaches through which she is able to work. . . . Medically necessary for her to be absent from work *during flare-ups*.

R. at 510-12 (emphasis added). Drs. Brown and Robertson additionally noted that Neal would not be incapacitated for a continuous period of time.

-20-

Neal also submitted the 2015 and 2016 Medical Source Statements of Dr. Wainwright, Dr. Brown, and Dr. Robertson as residual functional-capacity-type statements. Dr. Wainwright noted that although Neal's interstitial cystitis rendered her incapable of focusing for 25% of her workday or more and would likely require her to miss work approximately two days per month, Neal was capable of low-stress jobs. Dr. Robertson also determined Neal to be capable of low-stress work. Finally, Dr. Brown determined that Neal would have to miss more than four workdays per month and was incapable of working even low-stress jobs but refused to complete the functional capacity portion of his Medical Source Statement. These statements do not compel a finding in Neal's favor.

Neal additionally contends that her attendance records, in the form of a payroll reconciliation report, prove that she was permanently incapacitated based upon the cumulative effect of her conditions. However, employment records do not constitute objective medical evidence as defined by KRS 61.510(33). *Kentucky Ret. Sys. v. Harris*, No. 2015-CA-000437-MR, 2016 WL 354303, at *4 (Ky. App. Jan. 29, 2016). Therefore, the payroll reconciliation report is not probative evidence as to whether Neal was permanently incapacitated based upon the cumulative effect of her conditions.

Neal believes that the hearing officer and Board gave more weight to the opinions of the Medical Review Board physicians than those of Neal's treating

physicians. Contrary to Neal's assertion, however, it does not appear that the hearing officer determined that the reports of Neal's treating physicians were less credible than other evidence or the opinions of the medical examiners and should therefore be given less weight. Rather, as noted by the circuit court, the Board and hearing officer took into account the conflicting statements of Neal's own doctors and medical records. Thus, it is based upon Neal's own objective medical evidence and her own physicians' statements that Neal was denied an award of disability benefits. As the circuit court explained:

> [Neal] argues vigorously that [Retirement Systems] did not contradict her objective medical evidence demonstrating permanent disability. To support a claim for disability, however, the burden was on [Neal] to demonstrate via objective medical evidence that she is permanently disabled from performing her job due to her conditions. When the record contains contradictory statements regarding the severity of [Neal's] allegedly disabling conditions, or only contains qualified statements from physicians to the effect that [Neal's] conditions may occasionally result in an absence from work, the Committee may rely on the dearth of objective medical evidence to support a decision denying benefits. This is particularly true in cases concerning conditions such as fibromyalgia and chronic fatigue syndrome for which objective medical testing is often lacking; the only evidence establishing the existence and disabling character of such conditions is a physician's report repeating [Neal's] subjective statements pertaining to pain and fatigue. When these physicians likewise report that the conditions are manageable with medication and that such conditions may only result in intermittent absences from work, the Committee is well within its discretion to identify such as insufficient to show

-22-

> permanent disability and entitlement to disability benefits.

R. at 213-14.

"The presence of conflicting evidence alone is not enough to reverse the Board's decision. As previously stated, we must only question whether that evidence was so compelling that a reasonable person could not arrive at the same conclusion." *Hoskins v. Kentucky Ret. Sys.*, No. 2009-CA-000905-MR, 2011 WL 112147, at *3 (Ky. App. Jan. 14, 2011). Neal has not shown that the evidence in her favor was "so compelling that no reasonable person could have failed to be persuaded by it." *Brown*, 336 S.W.3d at 14-15 (quoting *McManus*, 124 S.W.3d 458). Given the conflicting medical opinions on Neal's disability, we cannot say that the circuit court erred in affirming the Board.

Finally, Neal makes several complaints regarding the administrative review process. Neal's predominant argument is that the opinions and recommendations of the medical examiners cannot be considered objective medical evidence because (1) they did not actually examine or treat Neal; and (2) they only examined the initial medical evidence that Neal submitted along with her application for retirement benefits. She additionally argues that "the hearing officer's findings of facts or conclusions [are not] objective medical evidence because the hearing officer was not only not a licensed physician, he otherwise had no medical training, education, experience or expertise and was thus unqualified to

-23-

evaluate the complex nature of Ms. Neal's various disabling conditions."

Appellant's Br. at 12. In response, the Franklin Circuit Court stated:

> [Neal] also states that the opinion of the medical review panel physicians does not constitute objective medical evidence serving as the basis for the final order. While the opinions of the panel are not themselves objective medical evidence, the Hearing Officer and Disability Appeals Committee can certainly take note of the panel's findings and analysis regarding cited objective medical evidence. In any case, both entities primarily relied on the medical records themselves rather than the context and analysis provided by the medical review panel physicians.
>
> Next, [Neal] claims that the Hearing Officer was not a physician and not capable of interpreting her medical records. The Hearing Officer is, of course, not required to be a physician. Moreover, the Hearing Officer is only one person in the administrative process. The Medical Review Panel, the Hearing Officer, and the Disability Appeals Committee all had access to the administrative record as it had then developed, and the Disability Committee was free to accept or reject the Hearing Officer's recommendations.

R. at 212-13.

"KRS 61.600(3) requires that an application for disability retirement benefits be supported by 'objective medical evidence by licensed physicians[.]'" *Kentucky Ret. Sys. v. Lowe*, 343 S.W.3d 642, 647 (Ky. App. 2011). "Treating physicians' reports are clearly objective medical evidence" even when based on a petitioner's "subjective complaints of pain." *Id.* Neal is correct that her physicians' reports are objective medical evidence, while the opinions of the

-24-

Retirement Systems' non-examining physicians are not; however, as the circuit court pointed out, the hearing officer, Disability Appeals Committee, and courts are all permitted to consider the opinions and recommendations of both treating and non-treating physicians based upon the objective medical evidence a claimant has submitted. *See Brown*, 336 S.W.3d at 18-19 (Ky. 2011). There is no rule "authorizing greater weight to be given to the opinions of the treating physician" than those of non-treating physicians. *Bowens*, 281 S.W.3d at 784.

Next, Neal argues that, under the logic of *Cepero v. Fabricated Metals Corporation*, a workers' compensation case, the medical examiners' opinions cannot be taken into account by either the Board or the courts because they are based upon "largely incomplete" information. 132 S.W.3d 839, 842 (Ky. 2004) ("[W]here it is irrefutable that a physician's history regarding work-related causation is corrupt due to it being substantially inaccurate or largely incomplete, any opinion generated by that physician on the issue of causation cannot constitute substantial evidence."). While our courts have previously relied upon the logic in workers' compensation cases to guide retirement disability cases, we do not find Neal's reasoning persuasive in this instance. *See McManus*, 124 S.W.3d at 458.

According to Neal, the additional records that she submitted at her administrative hearing render the medical examiners' opinions incomplete. Neal had the ability to obtain and submit her own medical records to the Medical

Review Panels and bore the burden of proving her disability. She has not demonstrated how the omission of these records[6] renders the medical examiners' medical histories "substantially inaccurate or incomplete." Moreover, Neal cannot depend on her own failure to submit a complete medical history and functional capacity evaluations to invalidate medical opinions with which she does not agree.

Finally, Neal alleges that the hearing officer "may not inject its own unqualified medical opinion to draw a conclusion from evidence[,]" citing to *Corgatelli v. Steel West, Inc.*, 335 P.3d 1150, 1160 (Idaho 2014) and *Koch v. Dyson*, 448 N.Y.S.2d 698, 729 (N.Y. App. Div. 1982). Neal cites to an unpublished case, *Kentucky Ret. Sys. v. Rose*, No. 2010-CA-002193-MR, 2012 WL 512587, at *5 (Ky. App. Feb. 17, 2012), in objecting to the hearing officer's qualifications to evaluate Neal's various conditions.

There is no statutory or regulatory requirement that hearing officers presiding over hearings at Retirement Systems be a licensed physician. Moreover, in *Hoskins v. Kentucky Retirement Systems*, a case cited by Neal herself, our Court stated that hearing officers overseeing administrative hearings are capable of interpreting medical records:

> Medical records are often relied upon by hearing
> officers in administrative proceedings. KRS 13B.090 (2)

---

[6] It is unclear which records exactly Neal refers to, but based on the record and procedural history, we will presume that the additional records Neal submitted were the Medical Source Statements completed in 2015 and 2016.

specifically permits "the submission of evidence in written form if doing so will expedite the hearing without substantial prejudice to any party. KRS 13B.090 (1) states that hearsay evidence is admissible if it is the type of evidence that reasonable and prudent persons would rely on in their daily affairs." *McManus*, 124 S.W.3d at 459.

While the records appear to contain test results and x-rays, they also contain notes written during the course of treatment from physicians. Hoskins failed to articulate why the evidence in this case required a degree or specialized knowledge. Nothing indicates that the hearing officer interpreted evidence that a reasonable person could not understand and rely upon.

No. 2009-CA-000905-MR, 2011 WL 112147, at *4 (Ky. App. Jan. 14, 2011).

Like Hoskins, Neal has failed to articulate any reasoning as to why the hearing officer in her case could not interpret the evidence and medical reports submitted. While a hearing officer may not second-guess medical experts or substitute his own judgment for that of medical professionals, he may make recommendations based upon the evidence presented regarding whether to reject a disability claim, which may be accepted or rejected by the Board.

Neal has not shown that the hearing officer substituted his judgment for the opinions of her doctors. Rather, the hearing officer weighed the medical opinions and objective medical evidence before him in a 19-page Findings of Fact, Conclusions of Law, and Recommended Order, considering Neal's own testimony,

-27-

the recommendations of the six medical review panel physicians, and the reports of Neal's treating physicians.

Our Supreme Court has previously addressed complaints that "the Disability Review Committee of the Board is comprised of individuals who are untrained in medicine[,]" providing that "the authority to dictate the 'arrangement' for processing disability retirement claims clearly belongs to the legislature, not this Court." *Bradley*, 567 S.W.3d at 121. Any dissatisfaction with the administrative process is a matter for the General Assembly rather than the courts.

## IV. CONCLUSION

In light of the foregoing, we AFFIRM the March 28, 2019, order of the Franklin Circuit Court.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| John Gray<br>Frankfort, Kentucky | Carrie B. Slayton<br>Frankfort, Kentucky |